**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JOSEPH L. CARPENTER,
6460 Sapphire St.
Las Vegas, NV 89108,

      Plaintiff and Counter-Defendant,           Case no. 1:15cv212-AJT/JFA

v.

MYSCHOOL.COM, an Internet Domain
Name,

      Defendant and Counter-Plaintiff.

## ANSWER AND COUNTERCLAIM

      Defendant MySchool.com, by counsel, hereby answers the Complaint for In Rem Relief

("Complaint") filed by Joseph L. Carpenter ("Carpenter").[1]  Defendant answers and responds to

the specific numbered paragraphs as follows:

### Responses to Numbered Paragraphs

      1.      Defendant admits that the Complaint purports to assert a claim against the

MySchool.com domain name, and denies the remaining allegations.

      2.      Defendant is without information sufficient to form a belief as to the allegations

of paragraph 2, and accordingly denies the allegations.

      3.      Defendant admits that the domain name registration records for the

MySchool.com domain name reflect a private registration, but denies any remaining allegations.

---

[1] Plaintiff appears to misidentify himself in his Complaint as "Joseph L. Carp**T**enter."  Plaintiff previously identified himself as "Joseph L. Carpenter" in his prior unsuccessful administrative efforts to obtain the MySchool.com domain name.

4.      Admitted.

5.      Defendant admits that Carpenter's purported claim arises under the cited statutes but denies all remaining allegations and specifically denies that Carpenter has a valid claim under the cited statutes.

6.      Admitted.

7.      Denied, and Defendant specifically states that Public Interest Registry has no relation to .com domain names.

8.      Denied.  Carpenter is well aware from his prior unsuccessful pursuit of a proceeding under ICANN's Uniform Domain Name Dispute Resolution Policy that the owner of the MySchool.com domain name registration is Original Web Ventures, Inc. of Kanata, Ontario Canada.[2]

9.      Denied.

10.     Defendant is without information sufficient to form a belief as to the allegations of paragraph 10, and accordingly denies the allegations.

11.     Denied.  Carpenter is well aware from his prior unsuccessful pursuit of a proceeding under ICANN's Uniform Domain Name Dispute Resolution Policy that Original Web Ventures, Inc. acquired the MySchool.com domain name on March 1, 2013.

12.     Denied.

13.     Denied.

14.     Defendant admits that a U.S. trademark registration confers the rights identified

---

[2] Carpenter is well aware that his statements in paragraphs 8 and 11 regarding the owner of the MySchool.com domain name and a purported recent transfer of the domain name are plainly false.  In Carpenter's ICANN domain name proceeding in September of 2014, the privacy registration was lifted and Original Web Ventures, Inc. was publicly identified as the owner of the domain name.  After Carpenter's ICANN complaint was denied, the privacy setting was restored for the domain name registration.  Carpenter is well aware that the owner of the domain name is not "an individual who resides in the country of the Cayman Islands" and the "legally effective of date [sic] of the Disputed domain name" is not 2014.

by paragraph 10 and Defendant further states that Registration No. 3568160 is void *ab initio.*
Defendant denies any remaining allegations.

15.     Defendant denies the allegations in this paragraph, and specifically denies that
Carpenter owns a valid trademark for MYSCHOOL.

16.     Denied.

17.     Denied.

18.     Defendant denies that Carpenter owns a valid trademark for MYSCHOOL and
denies that any authorized is needed from Carpenter for registration or use of the MySchool.com
domain name.  Defendant denies any remaining allegations in this paragraph.

19.     Defendant admits that the MySchool.com domain name is not the legal name of
the registrant of the domain name, Original Web Ventures, Inc.  Defendant denies the remaining
allegations of paragraph 19.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Denied.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

### PLAINTIFF'S FIRST CLAIM FOR RELIEF
**(Anticybersquatting Consumer Protection Act)**

29.     Defendant hereby incorporates its answers to Paragraphs 1-28 of the Complaint as

if fully stated herein.

30.   Denied.

31.   Denied.

32.   Denied.

33.   Denied.

34.   Denied.

35.   Denied.

36.   Admitted.

37.   Denied.

Defendant denies each and every allegation, whether express or implied, contained in the Complaint that is not specifically admitted herein.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Carpenter's claims are barred by the doctrine of statutory fair use.

### Third Affirmative Defense

Carpenter's claims are barred by the doctrine of trademark misuse.

### Fourth Affirmative Defense

Carpenter's claims are barred by waiver, laches, and/or estoppel.

### Fifth Affirmative Defense

Carpenter's claims are barred by Carpenter's unclean hands.

### Sixth Affirmative Defense

Carpenter's asserted U.S. Trademark Registration No. 3568160 is void *ab initio* and/or

invalid.

### Seventh Affirmative Defense

Defendant did not act in bad faith and Carpenter's claims have no colorable basis under the Anticybersquatting Consumer Protection Act or the Lanham Act.

### Eighth Affirmative Defense

Carpenter has abandoned any trademark rights in MYSCHOOL by failing to exercise adequate control over use of the purported trademark.

### Ninth Affirmative Defense

Defendant reserves the right to assert additional affirmative defenses that may become known.

WHEREFORE, Defendant MySchool.com respectfully requests that this Court dismiss the Complaint in its entirety, and grant such further relief as this Court deems proper.

### COUNTERCLAIMS

Defendant MySchool.com, by and through undersigned counsel, asserts the following as its Counterclaims against Carpenter:

### NATURE OF THE ACTION

1.      This is an action for trademark cancellation, a declaration of the parties' rights, reverse domain name hijacking, and for a finding of the MySchool.com domain registrant's lack of bad faith under the Anticybersquatting Consumer Protection Act.

### PARTIES

2.      The MySchool.com domain name registration is owned by Original Web Ventures, Inc., a corporation organized and existing under the laws of the Ontario, Canada, with its principal mailing address of PO Box 24159, Kanata, ON K2M 2C3 Canada.

3.      Carpenter has alleged that he is an individual resident of the state of Nevada and, on information and belief, Carpenter's address is 6460 Sapphire St., Las Vegas, NV 89108.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction of this action pursuant to 15 U.S.C. § 1125.

5.      Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) and by reason of Carpenter's choice of forum.

## FACTUAL BACKGROUND

### *The Domain Name and its Owner*

6.      The MySchool.com domain name is owned by Original Web Ventures, Inc. of Ontario, Canada.

7.      Original Web Ventures, Inc. is an e-commerce company that registers or acquires domain names, including apparently generic terms and common words, and uses the domain names to provide information and links concerning the generic or plain-meaning connotation of the terms.

8.      Original Web Ventures, Inc. has been in business for over nine years.

9.      Original Web Ventures, Inc. owns a number of school related domain names including, for example, BacktoSchool.net, IQSchool.com, LawSchools.org, MedicalSchools.net, MedicalSchools.org, MilitarySchool.org, MusicSchool.org, Preschool.net, SchoolNotes.net, SmartSchool.net, and TVSchool.com, and uses the domain names to provide content and links about education and school related information.

10.     Original Web Ventures, Inc. owns and acquires school related domain names because the online education industry is growing rapidly and attractive education related domain names are similarly growing in value.

11.    Original Web Ventures, Inc. acquired the MySchool.com domain name at a public auction conducted by Sedo.com, a well-known and established domain name marketplace.

12.    During the aforementioned auction, the MySchool.com domain name was the subject of multiple bids by members of the public and Original Web Ventures, Inc. eventually was the successful bidder at a price of $42,000.00.

13.    Original Web Ventures, Inc.'s acquisition of the MySchool.com domain name was completed on March 1, 2013.

14.    Similar to Original Web Ventures, Inc.'s many other school related domain names, Original Web Ventures, Inc. was attracted to the MySchool.com domain name purely as a result of its value as a generic and/or descriptive common term.

15.    A few days prior to being the successful bidder for the MySchool.com domain name, Original Web Ventures, Inc. also was the successful bidder in an auction for the domain name InSchool.com

16.    At the time of Original Web Ventures, Inc.'s acquisition of the MySchool.com domain name, Original Web Ventures, Inc. had no knowledge of Carpenter's purported trademark rights or his U.S. trademark registration for MYSCHOOL.

17.    Original Web Ventures, Inc. learned of Carpenter's purported trademark rights and his U.S. trademark registration for MYSCHOOL when Carpenter filed a Uniform Domain Name Dispute Resolution Proceeding complaint in September 2014 seeking a transfer of the domain name, which was denied under the rationale set forth below.

18.    Since acquiring the MySchool.com domain name, Original Web Ventures, Inc. has used the domain name to display links to information related to schools and education.

19.    Registration and use of the MySchool.com domain name has been fair and in

good faith in that the domain name is descriptive and/or generic for the content of the website

displayed by Original Web Ventures, Inc. through use of the domain name.

20.     Original Web Ventures, Inc., at all relevant times, believed and had reasonable

grounds to believe that its registration and use of the MySchool.com domain name was a fair use

or otherwise lawful.

### *Background on the Anticybersquatting Consumer Protection Act*

21.     The Anticybersquatting Consumer Protection Act (the "ACPA") was passed into

law in 1999 to address the serious problem of cybersquatting, which is the registration,

trafficking in, or use of a domain name with a bad faith intent to profit from a trademark that is

identical or confusingly similar to the domain name.

22.     Around the same time period, the Internet Corporation for Assigned Names and

Numbers ("ICANN") promulgated the Uniform Domain Name Dispute Resolution Proceeding

("UDRP") to provide an administrative remedy, dictated by contract, to also address

cybersquatting.

23.     The ACPA was developed to address "'cybersquatters' or 'cyberpirates,' who

abuse the rights of trademark holders by purposely and maliciously registering as a domain name

the trademark name of another company to divert and confuse customers" (106 Cong. Rec.,

S10517).

24.     Similarly, the UDRP was developed to address the "deliberate, bad faith

registration as domain names of well-known and other trademarks" (WIPO Final Report, Par. 23

(1999)).

25.     The ACPA and the UDRP include a requirement of bad faith.

"Good faith, innocent or negligent uses of a domain name that is identical or

confusingly similar to another's mark or dilutive of a famous mark **are not covered by the legislation's prohibition**.  Thus, registering a domain name while unaware that the name is another's trademark would not be actionable."
106 Cong. Rec., S10518.

26.     When drafting the ACPA, Congress was concerned that overreaching cybersquatting claims could be asserted to take a domain name from a registrant who did not possess the bad faith specifically required under the ACPA and administrative policies such as the UDRP.   The Congressional Record for the ACPA is replete with specific examples of overreaching cybersquatting claims such as claims asserted against "two year old Veronica Sam's 'Little Veronica' website and 12 year old Chris 'Pokey' Van Allen's web page."  106 Cong. Rec., S9755.

27.     In light of the potential for such overreaching claims, Congress provided domain name owners with causes of action to determine that they have not violated the ACPA, and to award damages, attorney's fees, and injunctive relief in cases of reverse domain name hijacking.

28.     Carpenter's actions in the present case are precisely the type of overreaching actions that Congress cited as the reason for creation of the counterclaims now asserted.

### *Carpenter's Reverse Domain Name Hijacking*

29.     Carpenter has a long history of using specious legal claims in an attempt to acquire the MySchool.com domain name.

30.     Carpenter filed an intent-to-use trademark application with the U.S. Patent and Trademark Office for the purported mark MYSCHOOL on March 22, 2007.

31.     On December 8, 2008, Carpenter filed a sworn statement with the U.S. Patent and Trademark Office, under 18 U.S.C. Section 1001, claiming that the purported mark MYSCHOOL was at that time in use in U.S. Commerce in association with all of the following

services:  "Advertising services, namely, advertising, promoting and offering information about the goods and services of others via a global communication network; providing a web site that enables users to post items for sale through on-line classified advertisements and messages; Communications services, namely, providing on-line chat rooms and forums for transmission of messages, photographs, information and data among computer users in the field of general interest, including among alumni of various educational institutions; Electronic transmission of information, messages, data, sound, images and documents among users of computers; Providing on-line communications links which transfer the website user to other local and global web pages electronic transmission of data and documents among users of computers; providing access to databases via a global communication network" ("Carpenter's December 8, 2008 PTO Declaration").

32.     On January 1, 2015, Carpenter filed a sworn statement with the U.S. Patent and Trademark Office, under 18 U.S.C. Section 1001, in connection with a Declaration of Use under Section 8 of the Lanham Act, claiming that the purported mark MYSCHOOL was at that time in use in U.S. Commerce in association with all of the following services:  "Advertising services, namely, advertising, promoting and offering information about the goods and services of others via a global communication network; providing a web site that enables users to post items for sale through on-line classified advertisements and messages; Communications services, namely, providing on-line chat rooms and forums for transmission of messages, photographs, information and data among computer users in the field of general interest, including among alumni of various educational institutions; Electronic transmission of information, messages, data, sound, images and documents among users of computers; Providing on-line communications links which transfer the website user to other local and global web pages electronic transmission of

data and documents among users of computers; providing access to databases via a global communication network" ("Carpenter's January 1, 2015 PTO Declaration").

33.     On information and belief, at the time that Carpenter executed and filed Carpenter's December 8, 2008 PTO Declaration and/or Carpenter's January 1, 2015 PTO Declaration, the purported MYSCHOOL trademark was not in use in U.S. commerce in association with all services identified in the sworn declarations.

34.     On information and belief, any use of the purported MYSCHOOL trademark has been undertaken by My School Inc. not Carpenter.

35.     On information and belief, the specimens of use submitted to the PTO by Carpenter with Carpenter's December 8, 2008 PTO Declaration and/or Carpenter's January 1, 2015 PTO Declaration reflect purported use of MYSCHOOL by Myschool, Inc. not Carpenter.

36.     On information and belief, the specimens of use submitted to the PTO by Carpenter with Carpenter's December 8, 2008 PTO Declaration and/or Carpenter's January 1, 2015 PTO Declaration do not depict use of MYSCHOOL in the manner that members of the public would have encountered the identified websites and/or online locations.

37.     On information and belief, the specimens of use submitted to the PTO by Carpenter with Carpenter's December 8, 2008 PTO Declaration and/or Carpenter's January 1, 2015 PTO Declaration are "mockups" or otherwise illegitimate specimens of use of MYSHOOL.

38.     On April 15, 2010, Carpenter filed a complaint against a prior owner of the MySchool.com domain name under the UDRP promulgated ICANN seeking a transfer of the MySchool.com domain name.

39.     The UDRP complaint was adjudicated by a three-member panel of the National Arbitration Forum, and the panel unanimously denied Carpenter's complaint.

40.     In reaching its decision, the UDRP panel stated the following:

[T]he disputed domain name is composed of the common, generic, words "my"

and "school" and is being used to advertise products related to those words,

namely educational products and services.  Thus, the Panel finds that the

Respondent does have rights and legitimate interests in the disputed domain

name. … Indeed, as noted above, **the disputed domain name is comprised of**

**common generic terms, which the Respondent was free to register and use**.

(emphasis added).

41.     Subsequent to the UDRP panel decision ruling against Carpenter, the

MySchool.com was advertised and sold at public auction to Original Web Ventures, Inc.

42.     Undeterred by the prior UDRP panel ruling against him, on September 4, 2014

Carpenter filed yet another complaint under the UDRP seeking a transfer of the MySchool.com

domain name.

43.     Original Web Ventures, Inc. was confirmed as the owner of the MySchool.com

domain name during the UDRP proceeding and Original Web Ventures, Inc. participated fully

and openly in the proceeding.

44.     The UDRP complaint was adjudicated by a three-member panel of the National

Arbitration Forum, and again the panel unanimously denied Carpenter's complaint.

45.     The UDRP panel stated the following, referring to Original Web Ventures, Inc. as

"Respondent":

**Respondent has legitimately used the domain name for advertising related to**

**the descriptive nature of the domain name itself.** Respondent's use of the

domain name for advertising related to schools is an obvious and natural use to

follow from the <myschool.com> domain name. Such use evinces legitimate

interest in the domain name.  There is no persuasive evidence that Respondent

registered and has used the domain name at issue in bad faith. … Respondent's

purchase of this <myschool.com> domain name is consistent with the legitimate

practice of generic domain resale.

(emphasis added).

46.     Notwithstanding the two prior unanimous three-member UDRP panel rulings

against him, and the most recent ruling specifically finding that Original Web Ventures, Inc.

ownership and use of the MySchool.com domain name was lawful, Carpenter filed his

Complaint in the present action again asserting his previously rejected argument that the

MySchool.com domain name was registered, trafficked in, and used with bad faith intent to

profit from Carpenter's trademark.

47.     Carpenter has made numerous knowing and material misrepresentations in his

pursuit of a forced transfer of the MySchool.com domain name from Original Web Ventures,

Inc.

48.     Carpenter has obtained and renewed a U.S. trademark registration for

MYSCHOOL that is void and/or invalid.

49.     Carpenter has asserted unsuccessfully on multiple occasions and through multiple

venues and proceedings that the MySchool.com domain name is identical to, confusingly similar

to, or dilutive of his void and/or invalid trademark registration for MYSCHOOL.

50.     Even if the MYSCHOOL trademark registration were valid, Carpenter is well

aware that the MySchool.com domain name is not identical to, confusingly similar to, or dilutive

of the purported trademark given Original Web Ventures, Inc.'s legitimate registration and use of

the MySchool.com domain name.

51.     Carpenter has asserted that the "Registrant is an individual who resides in the country of the Cayman Islands," yet Carpenter is well aware from his prior unsuccessful UDRP proceeding that Original Web Ventures, Inc. is the owner of the MySchool.com domain name.

52.     Carpenter has asserted that the "Registrant moved the Disputed Domain to the Cayman Islands in the mistaken belief that by doing so Registrant would avoid the jurisdiction of US courts," yet Carpenter is well aware from his prior unsuccessful UDRP proceeding that Original Web Ventures, Inc. is based in Ontario, Canada, and the Cayman Islands is merely the address of the registrar of the MySchool.com domain name.

53.     Carpenter has asserted that the "Registrant of the Disputed Domain acquired it in 2014," yet Carpenter is well aware from his prior unsuccessful UDRP proceeding that Original Web Ventures, Inc. acquired the MySchool.com domain name on March 1, 2013.

54.     Carpenter has asserted that the "legally effective registration of [sic] date of the Dispute Domain is the date which it last sold or changed hands; which, in this case, in 2014", yet Carpenter is well aware from his prior unsuccessful UDRP proceeding that Original Web Ventures, Inc. acquired the MySchool.com domain name on March 1, 2013.

55.     Carpenter has asserted that the "Disputed Domain was registered only for the purpose of obtaining Internet traffic from visitors who intended to visit [Carpenter] by searching for [Carpenter] in search engines, yet Carpenter is well aware from sworn testimony in his prior unsuccessful UDRP proceeding that Original Web Ventures, Inc. had no such purpose when acquiring the MySchool.com domain name.

56.     Carpenter has asserted that the "Registrant of the Disputed Domain has not engaged in bona fide noncommercial use or fair use of the myschool.com domain name," yet the

UDRP panel in Carpenter's prior unsuccessful UDRP proceeding specifically ruled that Original

Web Ventures, Inc. use of the MySchool.com domain name "evinces legitimate interest in the

domain name."

57.     Not only has Carpenter failed to disclose his knowledge of Original Web

Ventures, Inc. as the owner of the MySchool.com domain name and his prior efforts to acquire

the domain name through two unsuccessful UDRP proceedings, and misrepresented the identity

of the owner of the MySchool.com domain name, but Carpenter appears to have pursued his *in

rem* cybersquatting claim in a manner intended to limit Original Web Ventures, Inc.'s notice and

opportunity to defend the claim.

58.     Carpenter filed his in rem cybersquatting claim on February 18, 2015 but, to date,

it does not appear that Carpenter has sent the statutorily required notice of the alleged violation

and intent to proceed in rem pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(I)(aa).

59.     On March 3, 2015, Carpenter sent an email to the email address set forth in the

domain name registration for the MySchool.com domain name providing a copy of the

Complaint, but not providing any information about the date of publication of the complaint or

the deadline for a response to the Complaint.  It appears that Carpenter set upon this course in the

hopes of obtaining a default judgment without proper notice to the entity he knew to own the

domain name at issue.

## COUNT I
## NO BAD FAITH INTENT/CYBERPIRACY
## (15 U.S.C. §§ 1114(2)(D)(v), 1125(d)(1)(B)(ii))

60.     MySchool.com realleges and incorporates each and every allegation set forth

above as if fully set forth and restated herein.

61.     The actions described above evidence the absence of bad faith, within the

meaning of Anticybersquatting Consumer Protection Act, by Original Web Ventures, Inc. as owner of the MySchool.com domain name registration.

62.     The actions described above evidence Original Web Ventures, Inc.'s bona fide offering of goods or services on a site accessible under the MySchool.com domain name.

63.     The actions described above evidence a belief by Original Web Ventures, Inc. that the registration and use of the MySchool.com domain name was a fair use or otherwise lawful.

64.     The actions described above evidence reasonable grounds for belief by Original Web Ventures, Inc. that the registration and use of the MySchool.com domain name was a fair use or otherwise lawful.

65.     MySchool.com is entitled to a judgment of no bad faith intent in the registration or use of the MySchool.com domain name.

66.     Carpenter's conduct has harmed and will continue to harm Original Web Ventures, Inc., thereby entitling MySchool.com to recover actual and/or statutory damages and attorney's fees and costs.

**COUNT II**
**REVERSE DOMAIN NAME HIJACKING**
**(15 U.S.C. § 1114(2)(D)(iv))**

67.     MySchool.com realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

68.     Carpenter is well aware from his prior unsuccessful UDRP proceedings involving the MySchool.com domain name that Original Web Ventures, Inc.'s registration and use of the MySchool.com domain name is entirely proper.

69.     Carpenter's allegations represent a knowing and material misrepresentation that the MySchool.com domain name is a bad faith use of a valid trademark.

70.     Carpenter's allegations represent a knowing and material misrepresentation that the MySchool.com domain name is identical to, confusingly similar to, or dilutive of a valid trademark.

71.     Carpenter's allegations have resulted in the disabling and/or suspension the MySchool.com domain name thereby limiting Original Web Ventures, Inc.'s lawful use of the domain name.

72.     The above acts by Carpenter constitute reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1114(2)(D)(iv).

73.     The foregoing actions of Carpenter have been knowing, deliberate, and willful.

74.     MySchool.com is entitled to a judgment that Carpenter's actions violate the Anticybersquatting Consumer Protection Act.

75.     Carpenter's conduct has harmed and will continue to harm Original Web Ventures, Inc., thereby entitling MySchool.com to recover actual and/or statutory damages and attorney's fees and costs.

## COUNT III
## TRADEMARK INVALIDITY – FRAUD ON THE PTO
## (15 U.S.C. §§ 1064, 1119)

76.     MySchool.com realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

77.     On information and belief, the purported mark MYSCHOOL was not in use in U.S. Commerce in association with all of the services identified in Carpenter's December 8, 2008 PTO Declaration at the time of Carpenter's execution and filing of Carpenter's December 8, 2008 PTO Declaration with the U.S. Patent and Trademark Office.

78.     On information and belief, Carpenter had knowledge that the purported

MYSCHOOL mark was not in use in U.S. Commerce in association with all of the services identified in Carpenter's December 8, 2008 PTO Declaration and Carpenter made such false sworn statements to the U.S. Patent and Trademark Office with the intent to induce authorized agents of the U.S. Patent and Trademark Office to issue a federal registration.

79.     Reasonably relying on the truth of Carpenter's materially false sworn statements in Carpenter's December 8, 2008 PTO Declaration, the U.S. Patent and Trademark Office issued Registration No. 3568160 for the purported mark MYSCHOOL.

80.     On information and belief, the purported mark MYSCHOOL was not in use in U.S. Commerce in association with all of the services identified in Carpenter's January 1, 2015 PTO Declaration at the time of Carpenter's execution and filing of Carpenter's January 1, 2015 PTO Declaration with the U.S. Patent and Trademark Office.

81.     On information and belief, Carpenter had knowledge that the purported MYSCHOOL mark was not in use in U.S. Commerce in association with all of the services identified in Carpenter's January 1, 2015 PTO Declaration and Carpenter made such false sworn statements to the U.S. Patent and Trademark Office with the intent to induce authorized agents of the U.S. Patent and Trademark Office to maintain and renew Registration No. 3568160.

82.     Reasonably relying on the truth of Carpenter's materially false sworn statements in Carpenter's January 1, 2015 PTO Declaration, the U.S. Patent and Trademark Office issued a Notice of Acceptance Under Section 8 of the Trademark Act maintaining the registration.

83.     MySchool.com is being harmed by Registration No. 3568160 given Carpenter's repeated assertion of cybersquatting claims based on Registration No. 3568160.

84.     Pursuant to 15 U.S.C. § 1119, the Court should declare Carpenter's pleaded

Registration No. 3568160 void for fraud on the U.S. Patent and Trademark Office and enter an order directing the U.S. Patent and Trademark Office to cancel Registration No. 3568160.

<u>COUNT IV</u>
**TRADEMARK INVALIDITY – VOID *AB INITIO***
**(15 U.S.C. §§ 1064, 1119)**

85.    MySchool.com realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

86.    Trademark Act Section 1(a), 15 U.S.C. § 1051(a), allows registration of trademarks "used in commerce" and requires that an applicant make a verified statement that the mark is in use in commerce before the application will advance to registration.

87.    Trademark Act Section 45, 15 U.S.C. § 1127, defines "use in commerce" of a mark in connection with services "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services."

88.    Upon information and belief, Carpenter had not used the purported MYSCHOOL mark in commerce on or in connection with provision of all of the services identified in the trademark application, and resulting Registration No. 3568160, as of Carpenter's sworn date of first use in commerce, as required by the Trademark Act.

89.    MySchool.com is being harmed by Registration No. 3568160 given Carpenter's repeated assertion of cybersquatting claims based on Registration No. 3568160.

90.    Registration No. 3568160 is void *ab initio* for failure to use the mark in commerce and, pursuant to 15 U.S.C. § 1119, the Court should declare Carpenter's pleaded Trademark Registration No. 3568160 void and enter an order directing the U.S. Patent and

Trademark Office to cancel Trademark Registration No. 3568160.

## COUNT IV
## DECLARATORY JUDGMENT

91.     MySchool.com realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

92.     Carpenter has asserted that registration and use of the MySchool.com domain name violates the Anticybersquatting Consumer Protection Act.

93.     Carpenter's pleaded federal trademark registration, which forms the basis of his cybersquatting claim against MySchool.com, is invalid and unenforceable in that the trademark was not in use in association with all services identified in the application/registration at the time Carpenter filed multiple sworn declarations with the PTO.

94.     MySchool.com is entitled to a declaration and order from the Court finding Carpenter's asserted trademark registration to be invalid and directing the U.S. Patent and Trademark Office to cancel the registration.

95.     The MySchool.com domain name was not registered or used in bad faith and MySchool.com is entitled to a declaration that Original Web Ventures, Inc., as owner of the domain name, did not violate the Anticybersquatting Consumer Protection Act.

96.     Carpenter's claim against MySchool.com constitutes reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act and MySchool.com is entitled to a declaration that Carpenter has violated the Anticybersquatting Consumer Protection Act.

97.     An actual and justiciable controversy exists between Carpenter and MySchool.com and, pursuant to 28 U.S.C. § 2201 and 2202, MySchool.com is entitled to a declaratory judgment that Carpenter's pleaded trademark registration is invalid and should be

cancelled, Carpenter has violated the Anticybersquatting Consumer Protection Act, and Original Web Ventures, Inc., as owner of the domain name, has not violated the Anticybersquatting Consumer Protection Act.

## **PRAYER FOR RELIEF**

WHEREFORE, MySchool.com respectfully requests that the Court:

1.      Enter judgment on its behalf against Carpenter on all counts;

2.      Enter an order finding an absence of bad faith, within the meaning of Anticybersquatting Consumer Protection Act, by Original Web Ventures, Inc., as owner of the MySchool.com domain name;

3.      Enter an order finding that Carpenter made a knowing and material misrepresentation that the MySchool.com domain name is identical to, confusingly similar to, or dilutive of a valid trademark;

4.      Enter an order enjoining Carpenter from any and all further efforts to force Original Web Ventures, Inc. to transfer the MySchool.com to Carpenter;

5.      Enter an order finding that Carpenter's pleaded trademark registration is invalid and unenforceable;

6.      Enter an order directing the U.S. Patent and Trademark Office to cancel Carpenter's pleaded trademark registration;

7.      Enter an award of MySchool.com's damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1114(2)(D)(iv);

8.      Enter an award of statutory damages against Carpenter pursuant to 15 U.S.C. § 1117(d);

9.      Enter an order finding the case to be exceptional and awarding MySchool.com

its reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a); and

10.     Awarding such other and further relief as the Court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

Dated: March 18, 2015    By:    /s/                          
                                            Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (Pro Hac Vice pending)
WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wileyrein.com
dweslow@wileyrein.com

*Counsel for Defendant and Counter-Plaintiff
MySchool.com*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of March 2015, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such Filing (NEF) to the following:

> Steven Rinehart, Esq.
> 110 S. Regent Street
> Suite 200
> Salt Lake City, UT 84111
>
> *Counsel for Plaintiff*

> _____/s/_____
> Attison L. Barnes, III (VA Bar No. 30458)
> WILEY REIN LLP
> 1776 K Street, N.W.
> Washington, DC  20006
> Telephone:  (202) 719-7000
> Fax: (202) 719-7049
> abarnes@wileyrein.com
>
> *Counsel for Defendant and Counter-Plaintiff*
> *MySchool.com*