**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JOSEPH L. CARPENTER,

      Plaintiff,

v.

MYSCHOOL.COM, an Internet Domain
Name,

      Defendant.

Case no. 1:15cv212-JFA

**<u>EXHIBIT A</u>**

1

*** A PORTION OF THE TRANSCRIPT IS DESIGNATED

CONFIDENTIAL ***


UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
-------------------------------
                              :
JOSEPH L. CARPENTER,          :
                              :
        Plaintiff,            :
                              :
    v.                        :   Civil Action No.
                              :
MYSCHOOL.COM,                 :   1:15-cv-212-AJT/JFA
                              :
        Defendant.            :
                              :
-------------------------------
```

Deposition of YONATAN BELOUSOV, a witness

herein, at the law offices of Dunlap, Bennett &

Ludwig, 211 Church Street, S.E., Leesburg, Virginia,

commencing at 10:19 a.m. on Friday, August 14, 2015,

and the proceedings being taken down by stenotype and

transcribed by Catherine B. Crump, a Notary Public in

and for the Commonwealth of Virginia.

2

```
 1    APPEARANCES:

 2    On behalf of the Plaintiff:

 3        DAVID LUDWIG, ESQ.

 4        Dunlap, Bennett & Ludwig

 5        211 Church Street, S.E.

 6        Leesburg, Virginia  20175

 7        (703) 777-7319

 8        dludwig@dbllawyers.com

 9        Also Present:  Joseph Carpenter, Plaintiff

10

11    On behalf of the Defendant:

12        DAVID WESLOW, ESQ.

13        Wiley, Rein, LLP

14        1776 K Street, N.W.

15        Washington, D.C.  20006

16        (202) 719-7525

17        dweslow@wileyrein.com

18

19

20

21

22
```

Belousov, Yonatan                                    August 14, 2015

5

1                     P R O C E E D I N G S

2        Whereupon,

3                    YONATAN BELOUSOV,

4            having first been duly sworn, was

5            examined and testified as follows:

6

7        EXAMINATION BY COUNSEL FOR PLAINTIFF



Henderson Legal Services, Inc.

[redacted]

Q. Okay. And when you're looking at a

Belousov, Yonatan                                    August 14, 2015

28

1    potential purchase and maybe deciding what to bid on

2    it, how do you decide what number to put on a given

3    domain?

4         A.    Well, this is the most difficult part.

5    It depends.  You know, from my own kind of

6    proprietary software, we have over a hundred

7    variables we look into and a lot of the variables are

8    elimination variables.

9         So if they do not have some specific good

10   trait, we don't even want to look at them.  That way,

11   we eliminate most of the options and only the

12   potentially good ones remain.

13        Once that happens, then I look into it

14   personally manually and decide of how much I'm

15   willing to bid for what name.

16        Q.    Is it based on just sort of the letter

17   combination in the name or is it based on traffic

18   history or what's --

19        A.    It depends on over a hundred factors.

20   Some of them would be, first of all, the extension

21   itself.  Another one would be how short is it, how

22   many words are there in the name, and then it comes

Belousov, Yonatan                                      August 14, 2015

29

1    down to how many other extensions are taken, how

2    often is it used in other domains that currently

3    exist and how often is it used by other companies out

4    there, other websites, other groups.

5              That's important because, to me, that shows

6    genericness.  So if there is some sort of word or

7    phrase that's used by everybody, those are types of

8    names that I'm interested in holding long term.

9              Q.    Okay.  Interesting.

10             So I think you said one of the variables was

11   how -- whether the other top level domains -- maybe I

12   misunderstood, but whether the other top level

13   domains are used.  So if you're looking at buying

14   dog.org --

15             A.    Okay.

16             Q.    -- you would look at whether .net and

17   .com are already purchased and that factors in?

18             A.    That would just be one of our

19   elimination factors.  You know, something like "dog",

20   it's taken across all extensions automatically, like

21   all the top level ones, all the global ones, all the

22   country codes.  So that would show up as a really

Belousov, Yonatan                              August 14, 2015

30

1    positive indicator to this being potentially

2    something.

3           Once that gives me a good indicator, then I

4    look into it and I manually process this thing, Okay,

5    well, it means dog.  I know what that means and so

6    on.

Belousov, Yonatan                                    August 14, 2015

49

6       Q.     What about that name -- I think you said

7    "popped", but what made you interested in it

8    particularly?

9       A.      You know, so I told you I look at a lot

10   of variables and most of the variables were very,

11   very favorable, which is not often you will see that.

12       So it had a lot of other websites using the

13   phrase "my school".  You know, so there was something

14   like 3,000 domains at that point in existence just

15   between com, net, and org that contained the key

16   words "My School" in them.

17       Besides that, there are thousands of companies

18   that call themselves either my school -- either

19   something-my school or my school-something.  When you

20   search for it on the Google and Bing or, I guess,

21   Google and, you know, besides that, there's just a

22   lot of search volume for that key word, and the more

Belousov, Yonatan                              August 14, 2015

50

1   interesting part was that even though this was an

2   English phrase, it was actually surprisingly very

3   worldwide.

4        So it seemed like different countries had

5   something called my school-something.  It was

6   incredible.  Like if I'm looking for a domain to buy,

7   this was it.

Belousov, Yonatan                               August 14, 2015

52



6          When did you first become aware of Joseph

7   Carpenter, the plaintiff in this case?

8          **A.     The actual person Joseph Carpenter?**

9          Q.     Yes.

10         **A.     This would be the exact same time as I**

11   **got the UDRP notification.**

12         Q.     When did you first become aware of his

13   My School trademark registration?

14         **A.     The same time.**

Belousov, Yonatan                                    August 14, 2015



        Q.    Okay.  And the oldest, I guess based on

timestamps here, the E-mail at the very bottom,

September 4th at 1:52 p.m., you are writing to Andy

Booth asking -- well, what were you asking for in

that E-mail?

        A.    This was after I received the UDRP

notice.  My attorney looked into it and he mentioned

this isn't the first time and then he asked me to ask

Belousov, Yonatan                          August 14, 2015

56

1    **Andy for any material that they have from the first**

2    **one that will help us with it.**

3         Q.     Okay.   What was the name of your

4    attorney at that time?

5         **A.     Zack Moscowitz.**

6         Q.     Do you recall how long after you

7    received notice that the UDRP had been filed that

8    this E-mail was initiated?

9         **A.     I guess right after.**

Belousov, Yonatan                              August 14, 2015

6        A.      Yeah.   I don't know what somebody --

what Andy or Oliver or whoever else owned it before

did with it, but from day one, because again, I want

to make sure that I wouldn't be infringing on even

common law marks, I made sure that all the links on

it are completely targeted to the descriptiveness of

the name.

13        Q.      When did you make those efforts?

14        A.      As soon as I got the domain.  You know,

as soon as I could edit and change name servers, as

soon as possible.

Belousov, Yonatan                                    August 14, 2015



```
14          Q.    Okay.  You said you chose these key

15     words as soon as you acquired the domain or as soon

16     as you took control of it?

17          A.    So I chose key words as soon as I

18     acquired the domain, but not necessarily these ones.

19     I was still kind of -- you know, I'm choosing the key

20     words based on what's a more valuable kind of online

21     key word.

22          So this means something like online courses is
```

Belousov, Yonatan                                    August 14, 2015

74

1    perhaps much better than internet courses even though

2    it means approximately the same thing.  So at which

3    point, maybe I had internet courses before and then I

4    changed it to online courses, things like that; but

5    just as a general rule of thumb, I specifically tried

6    to my best to make sure that it's descriptive to the

7    domain.

1          Q.     How much revenue does MySchool.com

2    currently generate on a monthly basis?

3          A.     I'm not sure.  Probably, 700 a month.



Belousov, Yonatan                                          August 14, 2015

145

1                  CERTIFICATE OF NOTARY PUBLIC

2                  I, CATHERINE B. CRUMP, the officer before

3       whom the foregoing deposition was taken, do hereby

4       testify that the witness whose testimony appears in

5       the foregoing deposition was duly sworn by me; that

6       the testimony of said witness was taken by me

7       stenographically and thereafter reduced to

8       typewriting under my direction; that said deposition

9       is a true record of the testimony given by said

10      witness; that I am neither counsel for, related to,

11      nor employed by any of the parties to the action in

12      which this deposition was taken; and further, that I

13      am not a relative or employee of any attorney or

14      counsel employed by the parties hereto nor

15      financially or otherwise interested in the outcome of

16      the action.

17                  _____

18                  CATHERINE B. CRUMP

19                  Notary Public in and for the

20                  Commonwealth of Virginia

21                  Notary Registration No. 252644

22      My Commission Expires:  May 31, 2017

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JOSEPH L. CARPENTER,

      Plaintiff,

v.

MYSCHOOL.COM, an Internet Domain
Name,

      Defendant.

Case no. 1:15cv212-JFA

**<u>EXHIBIT B</u>**

  A better registrar   See Pro Features

HOME      CATEGORIES      ABOUT      ADVERTISE      DISCLOSURES

Search



  

## Top Stories

**Domain Dunce Award: Blue Coat**

POSTED UNDER **Policy & Law**

**Uniregistry continues to shine in .Com Winners and Losers**

POSTED UNDER **Domain Registrars**

# Guy takes third stab at MySchool.com with lawsuit

BY ANDREW ALLEMANN — FEBRUARY 20, 2015   ☐ POLICY & LAW   ☐ 36 COMMENTS

**Owner of MySchool411.com really wants MySchool.com, preferably without paying for it.**

If at first you don't succeed, try try again.

That's apparently Joseph Carpenter's belief.

Carpenter runs the site MySchool411.com. He filed a UDRP against MySchool.com in 2010 and lost. He filed another one last year and lost again.

**Here's one source behind the proliferation of Whois marketing**

POSTED UNDER **Domain Services**







Now he has filed an *in rem* lawsuit (pdf) against the domain name in a third attempt to get the domain name without buying it.

The lawsuit uses the Uniregistry whois privacy on the domain name to suggest that the "registrant" is based in Cayman, and thus justify the *in rem* lawsuit.

MySchool.com is certainly a valuable domain name. Original Web Ventures paid $42,000 to acquire the domain name in 2013. I don't think it's going to let this *in rem* action slip through, which means Carpenter may have bit off a bit more than he can chew.

(Thanks Mike for the tip.)



## Learn More...

1. **$42,000 MySchool.com domain name survives UDRP**
2. **Just Bulbs takes a 3rd stab at JustBulbs.com**
3. **Vanity.com files lawsuit to block transfer of domain name**

☐ 36 Comments

Tags: myschool.com, udrp

DOMAIN SERVICES PROFILE: GoDaddy.com



GoDaddy®
• World's #1 Domain Registrar
• Reach millions with Premium Listings
• Easy Bulk Registration & Transfer
• Make $ with CashParking®
• Earn more as a Reseller or Affiliate

*Sponsor*

# Comments




Domainer Extraordinaire says

February 20, 2015 at 4:52 pm

Scumbag thief.

Reply


JC Kitlee says

March 17, 2015 at 2:14 pm

Idiot…learn the facts before you comment.

Reply


Robbie says

February 20, 2015 at 8:38 pm

What a mess this guy is going to have to spend thousands to defend it, ultimately this guy should make a fair offer.

Reply


JC Kitlee says

March 17, 2015 at 2:15 pm

Look at their asking price – $750,000. Fair offer?? Come on.

Reply

 Steve says

February 20, 2015 at 9:47 pm

Hopefully this time the owners can collect damages for this huge
hassle. It's unbelievable the arbitrators didn't find reverse domain
highjacking. What more evidence do they need?? There needs to be
HUGE penalties for this type of nonsense.

Reply

 JC Kitlee says

March 17, 2015 at 2:26 pm

NO, there's huge penalties for Trademark infringement and
falsifying information to try to win UDRP disputes. In REAL court,
this doesn't fly.

Reply

 Richard says

February 20, 2015 at 10:34 pm

What a stubborn ass this Joseph Carpenter is, pony up or gtfo 

Reply

 JC Kitlee says

March 17, 2015 at 2:16 pm

Yes, he is VERY stubborn. Good for him!

Reply



Tommy says
August 18, 2015 at 5:49 pm

Yes great job putting your family on welfare!

Reply



JC says
September 2, 2015 at 12:46 pm

Never going to happen dumbass.

Reply



gary says
February 21, 2015 at 1:25 am

Apparently Mr. Carpenter is also a realtor.

Reply



JC Kitlee says
March 17, 2015 at 2:18 pm

Apparently, Mr. Carpenter has a back bone and $ funds to fight
these cybersquatters as far as they want to take it. I love it!

Reply



Simon says
February 21, 2015 at 8:56 am

He just needs to counter-sue for damages. On an other note everyone domain owner loses domain in a UDRP should sue for damages. It'll help deter them in the future.

Reply



JC Kitlee says
March 17, 2015 at 2:31 pm

The UDRP is garbage. People who win should have lost – People who have lost, should have won. Ultimately, it's just a cheap solution for the UDRP to make fast, easy $. The board members could care less. It's a joke. For real results – file a federal case.
It looks like Mr. Carpenter is looking for REAL results.

Reply



Nic says
February 21, 2015 at 9:10 pm

This would be an appropriate brand promotion in response:

MySchool911.com, Joseph Carpenter, "IP terrorist".

Also: Steven Rinehart, are you so desperate for work?

Reply

 JC Kitlee says
March 17, 2015 at 2:19 pm

Maybe you should actually look and see who owns the Trademarks for this domain instead of popping off at the mouth.

Reply

 Snoopy says
February 22, 2015 at 5:27 pm

You've got to wonder about the lawyers giving him advice.

Reply

 zanahoria says
February 23, 2015 at 1:56 am

Who are the lawyers??

Reply

Reality says



[February 22, 2015 at 5:32 pm](#)

Tortious interference. It'll cost him about $100,000 in damages, plus costs.

[Reply](#)

 JC Kitlee says

[March 17, 2015 at 2:23 pm](#)

Come on… nothing will happen to a Trademark owner trying to protect his rights in court. Are you serious? You really don't know the law. Learn it. Only thing that will happen to these cybersquatters is they will burn through funds trying to fight it. Nothing else. And it doesn't look like Mr.Carpenter is going to stop fighting. Good luck!

[Reply](#)

 Tommy says

[August 18, 2015 at 5:51 pm](#)

"You really don't know the law."

Aren't you the one who lost three lawsuits and counting Joseph? Maybe you shouldn't be the one giving advice on law.

[Reply](#)

 JC says

[September 2, 2015 at 12:45 pm](#)

We will see 

Reply



JC Kitlee says
March 17, 2015 at 2:13 pm

You are ALL idiots! Joseph owns this trademark. Original Web
Ventures are trying to get paid and have even faked the sale at
auction to boost the price. They WILL LOSE in federal court and
waste their $ doing it. The attorney is just doing what's right. GET
REAL! You're all a bunch of scumbag domain squatters trying to make
a fast dollar.

Reply



Andrew Allemann says
March 17, 2015 at 2:45 pm

This is weird. I was just looking over the lawyer's declaration about
publication of notice, and it looks like it was copied from a case for
y8.org. They left y8.org in there. I wonder if the publication is still
valid?

Reply



JC says
June 1, 2015 at 11:43 am

Let's see what happens when Just Bulbs gets a little help as a

Trademark owner fighting against a domain owner/cybersquatter.
Check out justbulbs.com next month and see the fate of the
domain name industry in regards to trademarks.

Reply



JC says
May 23, 2015 at 11:35 pm

You all don't realize what is about to happen to your "domain name"
world. Information has come to light about ICANN rules and the ability
to register Trademarked domains with ANY registry. NO Trademarked
domain will be allowed to be registered. NO Trademarked domain will
be allowed to be sold or purchased at ANY auction such as Sedo.
Because this cybersquatter has pushed Mr. Carpenter maliciously, he
will now DESTROY your world. EVERY Trademark owner will be
notified of this new and glorious information that will make it virtually
impossible to buy or sell Trademarked domains. You asked for it....
You got it!!!! Enjoy what's coming. Original Web Ventures and Yoni B.
will end up costing ALL of you MANY MILLIONS of $$. Don't forget to
thank him.

Reply



Peter says
May 30, 2015 at 10:47 am

Btw, JC Kitlee is indeed Joseph Carpenter. Google that and you will
find it associated with him. His project will never work, another loser
with a social network idea..

Reply



JC says
[June 1, 2015 at 10:12 am](#)

Your facts are about as intelligent as you are. And what's more
"loser" than buying domains in the hope that SOMEONE else is
going to have a good ides or be creative or successful so that
you can try to scam some money from them. SCUMBAG! Get a
brain. You're worse than used car salesmen.
Put up some of your trademarked domains and let Joseph show
you what's going to happen now. I'd like to see him shove
[explicit content removed]. Your whole industry is screwed within
the year. Mark it! 🙂

[Reply](#)



Peter says
[June 2, 2015 at 2:51 am](#)

Ok Joseph 😉

[Reply](#)



Tommy says
[August 18, 2015 at 5:46 pm](#)

Who cares Joseph. You'll be bankrupt way before that :0

[Reply](#)



JC says
[September 2, 2015 at 1:13 pm](#)

Not going to happen, sorry to tell you. What's amazing
is the fact that Yoni, the current owner, is willing to

spend a half a million dollars or more to keep a domain name that isn't worth anything to anyone but me because, being the sole Trademark holder in the US, I'm the only one that would buy it – and that ain't going to happen now. I don't need the domain to be successful…lol. I could call it Schrap.com and it literally wouldn't matter! I would change the name before I paid for this domain. SAD for Yoni. I even offered him what he paid for it just to be cool and stop the giant bill he is running up and still he wants to be stubborn. There's no winning for him and he's just paying for his attorneys next house. DUMB! He can't sell the domain to anyone else because I'll just come after that buyer next and then he'll get sued by them for non-disclosure. So all he can do is sit on it and collect a small pay check each month for the next 30 years until he recovers half of what he's spending in attorneys fees. What a joke. I have nothing to lose even if I don't win the federal case because the counter claims were dropped because he's so scared of his personal assets getting taken when he loses. So I'll just keep running up his bills on purpose and make this the most expensive domain he will ever buy in his life. I can prove a large amount of bad faith so he's not getting awarded any fees regardless of the outcome. And when I do win the case and he appeals it, I'll just keep on running up the bills. And if I don't, I'll just appeal it and keep running up his bills. I don't need an attorney anymore and I can better represent myself in this, especially with a jury involved so my costs are minor. It is literally the dumbest and most ignorant waste of money that I have ever seen in my life. Besides, I'm kinda enjoying learning the legal side of things 🙂
Cheers!

Reply

Tommy says



August 18, 2015 at 5:47 pm

Joseph what you should worry about is that you'll be bankrupt way before that would ever happen :). Have fun living on welfare!

Reply



JC says
September 2, 2015 at 1:15 pm

What's welfare? LOL! You're sad and ignorant.

Reply



Peter says
June 2, 2015 at 3:54 pm

Also, JC/JC Kitlee/Joseph Carpenter. Maybe you need some psychological help. You're on here attacking people for having their own opinions and making several different usernames. Just have some guts and use your own name, loser. I look forward to seeing you lose the case, you'll be working at McDonalds trying to pay off debts this time next year. Your idea probably isn't even original, everyone thinks they have the next big thing…. Another cheap person… Probably sitting in your mom's basement, get a job. You're the scumbag

Reply



JC says

June 2, 2015 at 5:38 pm

I'm sorry to disappoint you Dick, I mean "Peter", but my name is
JC. That's what you do is assume fiction for fact. The fact is, I'll
never work at McD's either will Joseph. We are in business
together, so I can state this as a fact. The case won't be lost in
ANY way or form – again a fact. We will see who's right about
the website soon enough. And, my mom's dead. So….enjoy your
domain name scavenger hunt for loose change and do me a
favor and stop into Las Vegas sometime and I'll be glad to
welcome you.

Reply



Peter says

June 2, 2015 at 11:58 pm

Ok Joseph 😉 … I know JC is short for Joseph Carpenter.
Strange that you know so much about a stranger's case,
and you're on him defending him so much. Nobody cares
about your mom, stop posting personal info…get a life.

Reply

# Leave a Reply

Privacy Policy     Disclosures     Advertising

DWW
Domain Name Wire

© 2005–2015 Domain Name Wire

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JOSEPH L. CARPENTER,

      Plaintiff,

v.                                                                    Case no. 1:15cv212-JFA

MYSCHOOL.COM, an Internet Domain
Name,

      Defendant.

**<u>EXHIBIT C</u>**

1

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

```
---------------------------:
JOSEPH L. CARPENTER,       :
                           :
     Plaintiff,            :
                           :  Case No.:
          vs.              :  1:15cv212-JFA
                           :
MYSCHOOL.COM, an Internet  :
Domain Name,               :
                           :
     Defendant.            :
---------------------------:
```

McLean, Virginia
Thursday, August 13, 2015

Videotaped Deposition of:

JOSEPH L. CARPENTER

called for oral examination by counsel for

Defendant, pursuant to notice, at Wiley Rein, 7925

Jones Branch Drive, Suite 6200, McLean, Virginia,

before Felicia A. Newland, CSR, of Capital Reporting

Company, a Notary Public in and for the Commonwealth

of Virginia, beginning at 12:31 p.m., were present

on behalf of the respective parties:

Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

2

1  On behalf of Plaintiff:

2       CHRISTINA HEISCHMIDT, ESQUIRE
        Dunlap, Bennett & Ludwig
3       211 Church Street
        Leesburg, Virginia 20175
4       cheischmidt@dbllawyers.com

5  On behalf of Defendant:

6       DAVID WESLOW, ESQUIRE
        Wiley Rein
7       1776 K Street, N.W.
        Washington, D.C. 20006
8       (202) 719-7000

9

   Also present:
10
        Yonatan Belousov
11      Solomon Francis, Videographer

12

13

14

15

16

17

18

19

20

21

22

6

1              VIDEOGRAPHER:  Good afternoon.  This

2     begins Media Unit No. 1 of the audio/visual

3     deposition of Mr. Joseph L. Carpenter taken in the

4     matter of Joseph L. Carpenter, Plaintiff, versus

5     MySchool.com, an Internet domain name, Defendant,

6     pending in the United States District Court for the

7     Eastern District of Virginia, Alexandria Division,

8     Case No. 1:15CV212JFA.

9              This deposition is being held at the

10    law offices of Wiley Rein, LLP, located at 7925

11    Jones Branch Drive, McLean, Virginia, on

12    August 13th, 2015 at approximately 12:31 p.m.  My

13    name is Solomon Francis, and our court reporter

14    Felicia Newland, we are with Capital Reporting

15    Company.

16              For the record, will Counsel please

17    introduce themselves and whom they represent.

18              MS. HEISCHMIDT:  Christina Heischmidt,

19    Dunlap, Bennett & Ludwig, for Plaintiff, Joseph

20    Carpenter.

21              MR. WESLOW:  David Weslow with Wiley Rein

22    on behalf of the Defendant, MySchool.com.

7

1            VIDEOGRAPHER:  At this time, will the

2    court reporter please swear in or affirm the

3    witness.

4            (Witness sworn.)

5



Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

108

4            I don't know, is this -- Myschool.com, is

5    this something that the attorney typed in?  Because

6    this isn't part of the screenshot.  This is a

7    printed type -- it's typed in not -- not as part of

8    the site.

9            This was never on our site.  This was

10   typed in as part of the page as submitted to the

11   thing.  It's probably typed in by the attorney.

12      Q    So you think the attorney added that,

13   "Myschool.com" --

14      A    Yeah.

15      Q    -- when submitting the --

16      A    Yeah.  It's not part of the site.  The

17   same as they added page 1 of 1, page 2 of 2.  It's

18   typed in over the top of the page.  My sites never

19   said Myschool.com.



110

4        Q        Thank you.

5                 And it's your position that the attorney

6    that prepared this typed "Myschool.com" on the --

7    on the pages that were submitted?

8        A        Yeah.  It's very obvious.  They're not

9    part of the site.  It's different printing, it's

10   different everything, so definitely added after.

Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015



116

21      Q    On December 8th, 2008, how were you using

22      the Myschool trademark to provide advertising

Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

117

1    services; namely, advertising promotion and

2    offering information about the goods and services

3    of others via a global computer network?

4        A    There's an iTunes.  There was an iTunes

5    link.  There was also eCalulator link, both to

6    different sites.  And this Bad Idea Magazine was a

7    link to their site and a banner ad.



## Capital Reporting Company
### Individual Capacity- Carpenter Joseph L. 08-13-2015

119

██   ████████████████

2      Q      Did Apple, eCalculator or Bad Idea ever

3   communicate with you about the ads that you put up

4   for them?

5      A      No.

6      Q      So these were ads that you put up on the

7   site without having been contacted by those

8   companies?

9      A      Yeah.  Links, like you would put on

10  anything.  Like Facebook that I have on now, I

11  didn't ask Facebook to put a link or YouTube to put

12  a link, or Vimeo to put a link, Twitter to put a

13  link, but they're all on my site.

14      Q      And no payment was ever received from Bad

15  Idea, eCalculator, or iTunes?

16      A      No.  At that point, you're trying to

17  promote business, so you're trying to give free

18  stuff away.

19      Q      On December 8th, 2008, how were you using

20  Myschool -- the Myschool trademark to provide a

21  website that enables users to post items for sale

22  through online classified advertisements and

120

1    messages?

2         A    Well, Dell laptop is one.  Dell is

3    another.  Alumni.  Sell anything, post for sale.

4    Basically the message boards for, in fact, a mini

5    Craigslist.  You could post anything you needed for

6    sale and people could respond.

7         Q    So that would -- it was the message board

8    service that was being used to post items for sale?

9         A    Yes.

10        Q    But you don't know who would have posted

11   the Dell laptop listing?

12        A    I have no idea.



Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

121

8      Q    As of December 8th, 2008, how were you

9    using the Myschool trademark to provide

10   communications services; namely, providing online

11   chat rooms and forums for transmission of messages,

12   photographs, information, and data among computer

13   users in the field of general interest, including

14   among alumni and various educational institutions?

15      A    Again, message boards, posts.  Everything

16   about the school on the message board can be

17   uploaded on the site, pictures.  Alumni could talk

18   to each other, comment on -- again, I submitted

19   several more screenshots of the actual commenting

20   and the back and forth between alumni, and the

21   comments on sales and, you know, all -- I've

22   already put that in discovery.  This site

Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

122

1   functioned 100 percent at this time.

2       Q     On December 8th, 2008?

3       A     Uh-huh.  The transmission of messages is

4   simply writing a piece of text that anybody could

5   see.



Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015



123

```
20      Q    As of December 8th, 2008, you said there
21   were probably 20 to 30 users at the site.  How many
22   of those users were not helping you develop the
```

Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

124

1   site?

2        A    Probably half.

3        Q    So 10 to 15?

4        A    Yeah, probably.

5        Q    Were any of those users not known to

6   someone that was helping you develop the site?

7        A    I couldn't tell you.  I didn't know some

8   of them.  Whether Edwin knew some of them, Chris

9   knew some of them.  It's a social networking site

10  so in some realm or another, everybody knows

11  everybody.

12       Q    So those 10 to 15 were probably all

13  connected to the 10 to 15 that were helping you

14  build the site?

15       A    Yeah, probably.  Like Facebook, you have

16  to be friends.  That's kind of how it works.



171



```
 3      Q    Okay.  So everything in the new trademark
 4  application should have a first use date of --
 5      A    2013.
 6      Q    2013?
 7      A    Uh-huh.
 8      Q    When in 2013?
 9      A    I can't remember when.  Either January or
10  February 2013.  I can't -- I'd have to go look.
```

Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

185



21      Q    Do you agree with the three-member panel

22    that it is okay for someone other than you to use

Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

186

1    the Myschool.com domain name to advertise

2    educational products and services?

3         A     No.

4         Q     Why not?

5         A     Because I own the right to advertising on

6    the Internet for Myschool.

7         Q     In association with educational products

8    and services?

9         A     Advertising, period.

10              And I wouldn't have a problem if it was

11   only educational products and services, but

12   Myschool.com is being used to advertise anything

13   beyond the scope of advertising Myschool just

14   related to those -- the domain name, those two

15   words.

16              It actually advertises for pigs or for

17   furniture or for dating or for social networking

18   or -- it advertises for almost anything.  It

19   doesn't solely advertise for the words "my school,"

20   so that's where I have a big problem.

21        Q     So did -- did you say you would not have

22   a problem with a domain name if it was used solely

Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

187

1    to advertise educational products and services?

2        A    No, I would still have a problem with it,

3    because I own the right for advertising on the

4    Internet for Myschool.

5        Q    Even in association with --

6        A    In association with anything.

7        Q    -- school?

8        A    I believe if you read the classification,

9    it says advertising on the Internet.

10       Q    So your position is you own Myschool for

11   any type of advertising on the Internet?

12       A    Yes.



Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015



215

22      Q    So is it now clear to you that Original

Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

216

1   Web Ventures has been the owner of the domain name

2   the whole time?

3        A    By the privacy.link number, yes, I

4   figured that out.  But it was long after this was

5   filed.



217



2      Q      Will a search engine search for Myschool

3    return a listing for your site?

4      A      No.  But it will -- if you search under

5    MySchool411.

6      Q      But not for Myschool?

7      A      No.  I've never SEO'd it on purpose.

221



8    BY MR. WESLOW:

9         Q    Mr. Carpenter, before we took a break, we

10   had talked between paragraph 11 of the complaint,

11   the complaint is Exhibit 28.  Paragraph 11 of the

12   complaint states, quote, the legally effective

13   registration date of the disputed domain name is

14   the date which it last sold or changed hands, which

15   in this case, 2014.

16              Is that still your position?

17        A    I don't know.  That's the position I was

18   told, so I'm sorry.

19        Q    Did you understand from the UDRP

20   proceeding that the domain name was purchased at a

21   Sedo auction in 2013?

22        A    Yes.

222

1      Q    So is it still your position, as stated

2   in paragraph 11, that the date the domain last sold

3   or changed hands was 2014?

4      A    Now that I know that they own it still,

5   no.  But before then, I thought it had changed

6   hands.

7      Q    So at this point, it's your position that

8   Original Web Ventures has been the owners since

9   2013?

10     A    Yes.



Capital Reporting Company
Individual Capacity- Carpenter Joseph L. 08-13-2015

293

1           CERTIFICATE OF NOTARY PUBLIC

2       I, FELICIA A. NEWLAND, CSR, the officer before

3   whom the foregoing videotaped deposition was taken,

4   do hereby certify that the witness whose testimony

5   appears in the foregoing videotaped deposition was

6   duly sworn by me; that the testimony of said witness

7   was taken by me in stenotype and thereafter reduced

8   to typewriting under my direction; that said

9   videotaped deposition is a true record of the

10  testimony given by said witness; that I am neither

11  counsel for, related to, nor employed by any of the

12  parties to the action in which this deposition was

13  taken; and, further, that I am not a relative or

14  employee of any counsel or attorney employed by the

15  parties hereto, nor financially or otherwise

16  interested in the outcome of this action.

17

18  _____

            FELICIA A. NEWLAND, CSR
19          Notary Public in and for the
            Commonwealth of Virginia
20
    My commission expires:
21  May 31, 2017
    Registration No.: 7569984
22

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JOSEPH L. CARPENTER,

      Plaintiff,

v.

MYSCHOOL.COM, an Internet Domain
Name,

      Defendant.

Case no. 1:15cv212-JFA

**EXHIBIT D**

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 09/30/2008)

# Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 77137273**
**Filing Date: 03/22/2007**

*NOTE: Data fields with the* * *are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

---

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **TEAS Plus** | **YES** |
| **MARK INFORMATION** | |
| *MARK | MYSCHOOL |
| *STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | MYSCHOOL |
| *MARK STATEMENT | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | CARPENTER., JOSEPH L. |
| *STREET | 6460 SAPPHIRE ST. |
| *CITY | LAS VEGAS |
| *STATE (Required for U.S. applicants) | Nevada |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE (Required for U.S. applicants only) | 89108 |
| PHONE | 702-622-8777 |
| FAX | 866-810-6114 |
| EMAIL ADDRESS | jlccanbe@yahoo.com |

MYSCHOOL00000313

| | |
|---|---|
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| **LEGAL ENTITY INFORMATION** | |
| *TYPE | INDIVIDUAL |
| * COUNTRY OF CITIZENSHIP | United States |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| *INTERNATIONAL CLASS | 038 |
| *DESCRIPTION | Communication services, namely, electronic transmission of data and documents among users of computers; Communications services, namely, transmitting streamed sound and audio-visual recordings via the Internet; Computer transmission of information accessed via a code or a terminal; Data communication by electronic mail; Delivery of messages by electronic transmission; Delivery of personalized greeting cards to others via electronic mail; Electronic message sending; Electronic message transmission; Electronic store-and-forward messaging; Electronic transmission of data and documents via computer terminals; Electronic transmission of messages and data; Electronic, electric, and digital transmission of voice, data, images, signals, and messages; Information transmission services via digital networks; Information transmission via electronic communications networks; Providing access to databases; Providing on-line chat rooms for transmission of messages among computer users concerning **field of general interest field of general interest, and also containing interactive polling pages about entertainment and a wide variety of topics**; Providing on-line communications links which transfer the website user to other local and global web pages; Providing on-line electronic bulletin boards for transmission of messages among computer users concerning **field of general interest field of general interest, and also containing interactive polling pages about entertainment and a wide variety of topics**; Providing on-line forums for transmission of messages among computer users concerning **field of general interest field of general interest, and also containing interactive polling pages about entertainment and a wide variety of topics**; Streaming of audio material on the Internet; Streaming of video material on the Internet; Transmission of messages over electronic media; Transmission of short messages; Transmission of sound and vision via |

MYSCHOOL00000314

| | |
|---|---|
| | satellite or interactive multimedia networks; Transmission of sound, picture and data signals; Transmission of sound, video and information |
| *FILING BASIS | SECTION 1(b) |

## GOODS AND/OR SERVICES AND BASIS INFORMATION

| | |
|---|---|
| *INTERNATIONAL CLASS | 035 |
| *DESCRIPTION | Advertising via electronic media and specifically the internet; Advertising, including promotion relating to the sale of articles and services for third parties by the transmission of advertising material and the dissemination of advertising messages on computer networks; Providing a web site at which users can offer goods for sale and buy goods offered by others; Providing a web site that enables users to post items for sale through on-line classified advertisements; Providing a web site where users can post ratings, reviews and recommendations on products and services; Providing a web site which features advertisements for the goods and services of others on a global computer network; Providing information about the goods and services of others via the global computer network; Public advocacy to promote awareness of **educational material** |
| *FILING BASIS | SECTION 1(b) |

## ADDITIONAL STATEMENTS INFORMATION

| | |
|---|---|
| *TRANSLATION (if applicable) | |
| *TRANSLITERATION (if applicable) | |
| *CLAIMED PRIOR REGISTRATION (if applicable) | |
| *CONSENT (NAME/LIKENESS) (if applicable) | |
| *CONCURRENT USE CLAIM (if applicable) | |

## CORRESPONDENCE INFORMATION

| | |
|---|---|
| *NAME | CARPENTER., JOSEPH L. |
| *STREET | 6460 SAPPHIRE ST. |
| * CITY | LAS VEGAS |
| * STATE (Required for U.S. applicants) | Nevada |

MYSCHOOL00000315

| | |
|---|---|
| * COUNTRY | United States |
| * ZIP/POSTAL CODE (Required for U.S. applicants only) | 89108 |
| PHONE | 702-622-8777 |
| FAX | 866-810-6114 |
| * EMAIL ADDRESS | jlccanbe@yahoo.com |
| *AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| **FEE INFORMATION** | |
| NUMBER OF CLASSES | 2 |
| FEE PER CLASS | 275 |
| TOTAL FEE DUE | 550 |
| **SIGNATURE INFORMATION** | |
| * SIGNATURE | /JC Kitlee/ |
| * SIGNATORY'S NAME | Joseph L. Carpenter |
| SIGNATORY'S POSITION | Owner |
| * DATE SIGNED | 03/21/2007 |
| **FILING INFORMATION SECTION** | |
| SUBMIT DATE | Thu Mar 22 02:11:31 EDT 2007 |
| TEAS STAMP | USPTO/FTK-68.224.72.198-2 0070322021131414281-77137 273-370aca0594a6a33409586 adfda8504f22c6-CC-1292-20 070322003810919895 |

MYSCHOOL00000316

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 09/30/2008)

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 77137273**
**Filing Date: 03/22/2007**

To the Commissioner for Trademarks:

Correspondence Information: CARPENTER., JOSEPH L.

6460 SAPPHIRE ST.

LAS VEGAS, Nevada 89108

702-622-8777(phone)

866-810-6114(fax)

jlccanbe@yahoo.com (authorized)

A fee payment in the amount of $550 will be submitted with the application, representing payment for 2 class(es).

### Declaration

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

Signature: /JC Kitlee/   Date: 03/21/2007
Signatory's Name: Joseph L. Carpenter
Signatory's Position: Owner

RAM Sale Number: 1292
RAM Accounting Date: 03/22/2007

Serial Number: 77137273
Internet Transmission Date: Thu Mar 22 02:11:31 EDT 2007

MYSCHOOL00000317

TEAS Stamp: USPTO/FTK-68.224.72.198-2007032202113141
4281-77137273-370aca0594a6a33409586adfda
8504f22c6-CC-1292-20070322003810919895

MYSCHOOL00000318

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JOSEPH L. CARPENTER,

      Plaintiff,

v.

MYSCHOOL.COM, an Internet Domain
Name,

      Defendant.

Case no. 1:15cv212-JFA

**EXHIBIT E**

| | |
|---|---|
| **To:** | CARPENTER., JOSEPH L. (jlccanbe@yahoo.com) |
| **Subject:** | TRADEMARK APPLICATION NO. 77137273 - MYSCHOOL - N/A |
| **Sent:** | 7/9/2007 7:52:06 AM |
| **Sent As:** | ECOM106@USPTO.GOV |
| **Attachments:** | |

## UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO**:     77/137273

**MARK**: MYSCHOOL

**CORRESPONDENT ADDRESS**:
   CARPENTER., JOSEPH L.
   6460 SAPPHIRE ST
   LAS VEGAS, NV 89108-5652

# *77137273*

**RESPOND TO THIS ACTION:**
**http://www.uspto.gov/teas/eTEASpageD.htm**

**GENERAL TRADEMARK INFORMATION:**
**http://www.uspto.gov/main/trademarks.htm**

**APPLICANT**:      CARPENTER., JOSEPH L.

**CORRESPONDENT'S REFERENCE/DOCKET NO**:
   N/A
**CORRESPONDENT E-MAIL ADDRESS**:
   jlccanbe@yahoo.com

## OFFICE ACTION

TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE ISSUE/MAILING DATE.

**ISSUE/MAILING DATE**: 7/9/2007

TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE: TEAS Plus applicants should submit the following documents using the Trademark Electronic Application System (TEAS) at http://www.uspto.gov/teas/index.html:  (1) written responses to Office actions; (2) preliminary amendments; (3) changes of correspondence address; (4) changes of owner's address; (5) appointments and revocations of attorney; (6) amendments to allege use; (7) statements of use; (8) requests for extension of time to file a statement of use, and (9) requests to delete a §1(b) basis.  If any of these documents are filed on paper, they must be accompanied by a $50 per class fee.  37 C.F.R. §§2.6(a)(1)(iv) and 2.23(a)(i).  Telephone responses will not incur an additional fee.  NOTE:  In addition to the above, applicant must also continue to accept correspondence from the Office via e-mail throughout

MYSCHOOL00000322

the examination process in order to avoid the additional fee.  37 C.F.R. §2.23(a)(2).

The assigned trademark examining attorney has reviewed the referenced application and determined the following.

<u>Search Results.</u>

The examining attorney has searched the Office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d).  TMEP §704.02.

Nevertheless, the applicant should note the following ground for refusal.

<u>STATUTORY REFUSAL: THE MARK IS MERELY DESCRIPTIVE.</u>
The examining attorney refuses registration on the Principal Register because the proposed mark merely describes the services.  Trademark Act Section 2(e)(1), 15 U.S.C. Section 1052(e)(1); *Trademark Manual of Examining Procedure* Section 1209.
A mark is merely descriptive under Trademark Act Section 2(e)(1), 15 U.S.C. 1052(e)(1), if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the relevant services.  *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987);  *In re Bed & Breakfast Registry,* 791 F.2d 157, 229 USPQ 818 (Fed. Cir. 1986); *In re MetPath Inc.*, 223 USPQ 88 (TTAB 1984); *In re Brightâ€'Crest, Ltd.* 204 USPQ 591 (TTAB 1979); TMEP section 1209.01(b).
The examining attorney must consider whether a mark is merely descriptive in relation to the identified services, not in the abstract.  *In re Omaha National Corp.,* 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); *In re Abcor Development Corp.,* 588 F.2d 811, 200 USPQ 215 (CCPA 1978); *In re Venture Lending Associates*, 226 USPQ 285 (TTAB 1985).
The applicant's mark is MY SCHOOL in  standard character format for services in International Class 35 and 38.

The term MY is defined in pertinent part as follows:

# my

**my** (mī) *adjective*
The possessive form of **I**
1.  Used as a modifier before a noun: *my boots; my accomplishments.*
2.  Used preceding various forms of polite, affectionate, or familiar address: *My friend, you are so right.*
3.  Used in various interjectional phrases: *My word! My goodness!*

*interjection*
Used as an exclamation of surprise, pleasure, or dismay: *Oh, my! What a tiring day!*

[Middle English *mi*, from Old English *min*.][1]
The applicant's services feature the user's school.    *See* the applicant's identification of services.

A mark that combines descriptive terms may be registrable if the composite creates a unitary mark with a separate, nondescriptive meaning.  *In re Colonial Stores, Inc.*, 394 F.2d 549, 157 USPQ 382 (C.C.P.A. 1968) (holding SUGAR & SPICE not to be merely descriptive of bakery products).  However, the mere combination of descriptive words does not automatically create a new nondescriptive word or phrase.  *E. g.*, In re *Associated Theatre Clubs Co.*, 9 USPQ2d 1660, 1662 (TTAB 1988) (finding GROUP SALES BOX OFFICE descriptive for theater ticket sales services).  The registrability of a mark created by

MYSCHOOL00000323

combining only descriptive words depends on whether a new and different commercial impression is created, and/or the mark so created imparts an incongruous meaning as used in connection with the goods and/or services. Where, as in the present case, the combination of the descriptive words creates no incongruity, and no imagination is required to understand the nature of the goods and/or services, the mark is merely descriptive. *E.g.*, *In re Copytele Inc.*, 31 USPQ2d 1540, 1542 (TTAB 1994); *Associated Theatre Clubs*, 9 USPQ2d at 1662.

Since the applicant's services feature the user's school, this examining attorney finds the entire mark merely descriptive and registration is therefore refused.

The examining attorney can not now recommend an amendment to the Supplemental Register because the application was filed under Trademark Act Section 1(b). A mark in an application under Trademark Act Section 1(b) is not eligible for registration on the Supplemental Register until an acceptable amendment to allege use under 37 C.F.R. §2.76 or statement of use under 37 C.F.R. §2.88 has been filed. 37 C.F.R. §§2.47(d) and 2.75(b); TMEP §1102.03. When a Section 1(b) application is amended to the Supplemental Register, the effective filing date of the application is the date of filing of the allegation of use. 37 C.F.R. §2.75(b); TMEP §§206.01 and 1102.03.

While it is recognized that the process for *filing* an application in TEAS PLUS can be a simple one, the process of satisfying all of the requirements for *registration* is indeed complex. It is strongly recommended, although not required, that the applicant hire a trademark attorney because of the technicalities involved in this application. The Patent and Trademark Office cannot aid in the selection of an attorney.


Responding to this Office Action.

No set form is required for response to this Office action. The applicant must respond to each point raised. The applicant should simply set forth the required changes or statements and request that the Office enter them. The applicant must sign the response. In addition to the identifying information required at the beginning of this letter, the applicant should provide a telephone number to speed up further processing.

In all correspondence to the Patent and Trademark Office, the applicant should list the name and law office of the examining attorney, the serial number of this application, the mailing date of this Office action, and the applicant's telephone number.

If the applicant has any questions or needs assistance in responding to this Office Action, please telephone the assigned examining attorney. However, you may be able to can receive a response faster by sending me an email at john.dalier@uspto.gov with any questions regarding this Office Action. Note that this email address is not for responses to Office Actions, just questions about Office Actions.

*Copies of Documents*

The applicant may view and download any or all documents contained in the electronic file wrapper of all pending trademark applications, as well as many registrations via the Trademark Document Retrieval (TDR) system available online at: <http://portal.uspto.gov/external/portal/tow>. Currently, you can access all pending applications and all Madrid Protocol filings, and also many registrations, via TDR. The USPTO is in the process of converting all remaining registrations into a digital format, to permit future TDR access. This conversion process is expected to take several years.

MYSCHOOL00000324

Downloads are converted into PDF format and may be viewed with any PDF viewer, including the free Adobe Reader.

/John D. Dalier/
Trademark Examining Attorney
Law Office 106; 571 272 9150
Fax (571) 273-9106

**RESPOND TO THIS ACTION:** If there are any questions about the Office action, please contact the assigned examining attorney. A response to this Office Action should be filed using the Office's Response to Office action form available at http://www.uspto.gov/teas/eTEASpageD.htm. If notification of this Office action was received via e-mail, no response using this form may be filed for 72 hours after receipt of the notification. **Do not attempt to respond by e-mail as the USPTO does not accept e-mailed responses**.

If responding by paper mail, please include the following information: the application serial number, the mark, the filing date and the name, title/position, telephone number and e-mail address of the person signing the response. Please use the following address: Commissioner for Trademarks, P.O. Box 1451, Alexandria, VA 22313-1451.

**STATUS CHECK:** Check the status of the application at least once every six months from the initial filing date using the USPTO Trademark Applications and Registrations Retrieval (TARR) online system at http://tarr.uspto.gov. When conducting an online status check, print and maintain a copy of the complete TARR screen. If the status of your application has not changed for more than six months, please contact the assigned examining attorney.

---

[1]*The American Heritage® Dictionary of the English Language, Third Edition* copyright © 1992 by Houghton Mifflin Company. Electronic version licensed from INSO Corporation; further reproduction and distribution restricted in accordance with the Copyright Law of the United States. All rights reserved.

MYSCHOOL00000325

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JOSEPH L. CARPENTER,

     Plaintiff,

v.

MYSCHOOL.COM, an Internet Domain
Name,

     Defendant.

Case no. 1:15cv212-JFA

**EXHIBIT F**

PTO Form 1957 (Rev 9/2005)
OMB No. 0651-0050 (Exp. 04/2009)

# Response to Office Action

---

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 77137273 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 106 |
| **MARK SECTION (no change)** | |
| **ARGUMENT(S)** | |

Applicant Joseph L. Carpenter ("Applicant") responds as follows to the Office Action ("Office Action") dated July 9, 2007 in respect of Application Serial No. 77137273 (the "Application") for the mark MSCHOOL ("MYSCHOOL", "Applicant's Mark" or "the Mark").

Applicant respectfully contends that the mark MYSCHOOL is not merely descriptive of the services identified in the Application and therefore respectfully requests the Examining Attorney to withdraw the refusal to register on this basis.

AMENDMENT TO IDENTIFICATION OF GOODS AND SERVICES

Before addressing the issue of descriptiveness, Applicant respectfully requests that the identification of services be amended as requested in the appropriate section of this Response to Office Action.

MYSCHOOL MARK IS NOT MERELY DESCRIPTIVE OF APPLICANT'S SERVICES

In order for the refusal of Applicant's MYSCHOOL mark to be proper, this mark must merely describe the services identified in the Application.  Applicant submits that it is unlikely that consumers would conclude that the MYSCHOOL *mark merely* describes these particular services.  It is well settled that for a mark to be deemed descriptive, it must "forthwith convey an immediate idea of the ingredients, qualities or characteristics of the goods."  *Stix Products, Inc. v. United Merchants & Mfrs. Inc.*, 295 F.Supp. 479, 160 U.S.P.Q. 777 (S.D.N.Y.)

Applicant submits that the mark MYSCHOOL does not convey to consumers an "immediate idea" of the services identified in the Application, but is, at most, only "suggestive" of Applicant's goods.    This is not a bar to registration on the Principal Register.  Specifically, T.M.E.P. §1209.01(a) states in pertinent part:

"Suggestive marks are those that, when applied to the goods at issue, require imagination, thought or perception to reach a conclusion as to the nature of those goods……..Suggestive marks, like fanciful and arbitrary marks, are registrable on the Principal Register without proof

MYSCHOOL00000327

of secondary meaning. Therefore, a designation does not have to be devoid of all meaning in relation to the goods to be registrable."

That is, a mark may have some meaning in relation to the goods or services in question and still be registrable on the Principal Register, so long as it would be necessary for consumers to engage in some "imagination, thought and perception" to associate the term with the subject goods.    Such is the case here.  While the term MYSCHOOL might have some attenuated meaning in relation to the services in question, consumers of these services would clearly need to engage in some "imagination, thought and perception" to associate this mark with Applicant's specific services.

Based on this reasoning, Courts have, for example, concluded that the following marks are not "descriptive", but only "suggestive" of the goods in question:

       **RAPID-SHAVE** for shaving cream (Colgate-Palmolive Co. v House for Men, Inc., 143 U.S.P.Q. 159 (T.T.A.B. 1964);

       **AUDIO FIDELITY** for phonograph records (*Audio Fidelity, Inc. v. London Records, Inc.*, 332 F.2d 577, 141 U.S.P.Q. 792 (C.C.P.A. 1965); and

       **DIAL-A-MATRESS** for mattress sales (*Dial-A-Mattress Operating Corp. v. Mattress Madness, 841 F. Supp. 1339.*

     In *Rapid Shave*, the Court ruled that RAPID-SHAVE was not merely descriptive for shaving cream, and in the same proceeding cancelled a registration for QUICK SHAVE for the same goods based on likelihood of confusion with RAPID-SHAVE.

     In *Audio Fidelity*, the Court found AUDIO FIDELITY not to be descriptive, but only "suggestive" of phonograph records, despite the Trademark Trial and Appeal Board's conclusion below that:

    "it is clear that, as defined, the word 'audio' means sound and that the word "fidelity" means faithfullness [sic]; that both terms have a well recognized meaning in the field of sound reproduction equipment…….It is also clear that terms synonymous with "audio fidelity", such as "sound fidelity" and "sonic fidelity" have been and still are frequently being used in the sound equipment field.." *Audio Fidelity*, *supra*, 322 F.2d 578-579.

In *Dial-A-Mattress*, Plaintiff was engaged in the business of selling mattresses to the public by soliciting telephone orders.    Despite the fact that the subject mark contained the elements "Dial" and "Mattress", the Court ruled that the mark DIAL-A-MATTRESS was not descriptive of Plaintiff's services, which enabled consumers to order mattresses by merely "dialing" the Plaintiff's telephone number.

Applicant respectfully submits that the mark MYSCHOOL is no more descriptive of Applicant's services than the RAPID-SHAVE, AUDIO FIDELITY and DIAL-A-MATTRESS marks are for the goods or services to which they relate.

<u>Doubts on the Issue of Descriptiveness Should Be Resolved in Favor of Applicant</u>

Finally, Applicant notes that the law is clear that any doubts on the issue of descriptiveness should be resolved in favor of the Applicant.  *In re Pennwalt Corporation*, 173 U.S. P.Q. 317 (T.T.A.B.  ("DRI-FOOT" not merely descriptive of foot anti-perspirant.)

<u>CONCLUSION</u>

     Based on the foregoing, Applicant respectfully submits that its MYSCHOOL mark is not "merely descriptive" of the goods identified in the Application, and therefore respectfully requests that the Section 2(e)(1) refusal be withdrawn.

Respectfully submitted,

Gregory F. Buhyoff

Weide & Miller, Ltd.
Attorneys for Applicant

## GOODS AND/OR SERVICES SECTION (035)(current)

| INTERNATIONAL CLASS | 035 |
| --- | --- |

**DESCRIPTION**

Advertising via electronic media and specifically the internet; Advertising, including promotion relating to the sale of articles and services for third parties by the transmission of advertising material and the dissemination of advertising messages on computer networks; Providing a web site at which users can offer goods for sale and buy goods offered by others; Providing a web site that enables users to post items for sale through on-line classified advertisements; Providing a web site where users can post ratings, reviews and recommendations on products and services; Providing a web site which features advertisements for the goods and services of others on a global computer network; Providing information about the goods and services of others via the global computer network; Public advocacy to promote awareness of educational material

| FILING BASIS | Section 1(b) |
| --- | --- |

## GOODS AND/OR SERVICES SECTION (035)(proposed)

| INTERNATIONAL CLASS | 035 |
| --- | --- |

**DESCRIPTION**

Advertising services, namely, advertising, promoting and offering information about the goods and services of others via a global communication network; providing a web site that enables users to post items for sale through on-line classified advertisements and messages;

| FILING BASIS | Section 1(b) |
| --- | --- |

## GOODS AND/OR SERVICES SECTION (038)(current)

| INTERNATIONAL CLASS | 038 |
| --- | --- |

**DESCRIPTION**

Communication services, namely, electronic transmission of data and documents among users of computers; Communications services, namely, transmitting streamed sound and audio-visual recordings via the Internet; Computer transmission of information accessed via a code or a terminal; Data communication by electronic mail; Delivery of messages by electronic transmission; Delivery of personalized greeting cards to others via electronic mail; Electronic message sending; Electronic message transmission; Electronic store-and-forward messaging; Electronic transmission of data and documents via computer terminals; Electronic transmission of messages and data; Electronic, electric, and digital transmission of voice, data, images, signals, and messages; Information transmission services via digital networks; Information transmission via electronic communications networks; Providing access to databases; Providing on-line chat rooms for transmission of messages among computer users concerning field of general interest field of general interest, and also containing interactive polling pages about entertainment and a wide variety of topics; Providing on-line communications links which transfer the website user to other local and global web pages; Providing on-line electronic bulletin boards for transmission of messages among computer users concerning field of general interest field of general interest, and also containing interactive polling pages about entertainment and a wide variety of topics; Providing on-line forums for transmission of messages among computer users concerning field

MYSCHOOL00000329

of general interest field of general interest, and also containing interactive polling pages about entertainment and a wide variety of topics; Streaming of audio material on the Internet; Streaming of video material on the Internet; Transmission of messages over electronic media; Transmission of short messages; Transmission of sound and vision via satellite or interactive multimedia networks; Transmission of sound, picture and data signals; Transmission of sound, video and information

| **FILING BASIS** | Section 1(b) |
|---|---|

## GOODS AND/OR SERVICES SECTION (038)(proposed)

| **INTERNATIONAL CLASS** | 038 |
|---|---|

| **DESCRIPTION** |
|---|

Communications services, namely, providing on-line chat rooms and forums for transmission of messages, photographs, information and data among computer users in the field of general interest, including among alumni of various educational institutions; Electronic transmission of information, messages, data, sound, images and documents among users of computers; Providing on-line communications links which transfer the website user to other local and global web pages electronic transmission of data and documents among users of computers; providing access to databases via a global communication network.

| **FILING BASIS** | Section 1(b) |
|---|---|

## SIGNATURE SECTION

| **RESPONSE SIGNATURE** | /Gregory F. Buhyoff/ |
|---|---|
| **SIGNATORY'S NAME** | Gregory F. Buhyoff |
| **SIGNATORY'S POSITION** | Attorney of record |
| **DATE SIGNED** | 01/06/2008 |
| **AUTHORIZED SIGNATORY** | YES |

## FILING INFORMATION SECTION

| **SUBMIT DATE** | Sun Jan 06 18:23:15 EST 2008 |
|---|---|
| **TEAS STAMP** | USPTO/ROA-208.57.203.177-20080106182315134946-7713 7273-410a68eacbb9f9dcd9d3 bb145a03e795ef4-N/A-N/A-2 0080106180807194592 |

PTO Form 1957 (Rev 9/2005)
OMB No. 0651-0050 (Exp. 04/2009)

# Response to Office Action
## To the Commissioner for Trademarks:

MYSCHOOL00000330

Application serial no. **77137273** has been amended as follows:

**ARGUMENT(S)**
**In response to the substantive refusal(s), please note the following:**

Applicant Joseph L. Carpenter ("Applicant") responds as follows to the Office Action ("Office Action") dated July 9, 2007 in respect of Application Serial No. 77137273 (the "Application") for the mark MSCHOOL ("MYSCHOOL", "Applicant's Mark" or "the Mark").

Applicant respectfully contends that the mark MYSCHOOL is not merely descriptive of the services identified in the Application and therefore respectfully requests the Examining Attorney to withdraw the refusal to register on this basis.

AMENDMENT TO IDENTIFICATION OF GOODS AND SERVICES

Before addressing the issue of descriptiveness, Applicant respectfully requests that the identification of services be amended as requested in the appropriate section of this Response to Office Action.

MYSCHOOL MARK IS NOT MERELY DESCRIPTIVE OF APPLICANT'S SERVICES

In order for the refusal of Applicant's MYSCHOOL mark to be proper, this mark must merely describe the services identified in the Application. Applicant submits that it is unlikely that consumers would conclude that the MYSCHOOL *mark merely* describes these particular services. It is well settled that for a mark to be deemed descriptive, it must "forthwith convey an immediate idea of the ingredients, qualities or characteristics of the goods." *Stix Products, Inc. v. United Merchants & Mfrs. Inc.*, 295 F.Supp. 479, 160 U.S.P.Q. 777 (S.D.N.Y.)

Applicant submits that the mark MYSCHOOL does not convey to consumers an "immediate idea" of the services identified in the Application, but is, at most, only "suggestive" of Applicant's goods.   This is not a bar to registration on the Principal Register.  Specifically, T.M.E.P. §1209.01(a) states in pertinent part:

> "Suggestive marks are those that, when applied to the goods at issue, require imagination, thought or perception to reach a conclusion as to the nature of those goods……..Suggestive marks, like fanciful and arbitrary marks, are registrable on the Principal Register without proof of secondary meaning. Therefore, a designation does not have to be devoid of all meaning in relation to the goods to be registrable."

That is, a mark may have some meaning in relation to the goods or services in question and still be registrable on the Principal Register, so long as it would be necessary for consumers to engage in some "imagination, thought and perception" to associate the term with the subject goods.   Such is the case here.  While the term MYSCHOOL might have some attenuated meaning in relation to the services in question, consumers of these services would clearly need to engage in some "imagination, thought and perception" to associate this mark with Applicant's specific services.

Based on this reasoning, Courts have, for example, concluded that the following marks are not "descriptive", but only "suggestive" of the goods in question:

> **RAPID-SHAVE** for shaving cream (Colgate-Palmolive Co. v House for Men, Inc., 143 U.S.P.Q. 159 (T.T.A.B. 1964);

MYSCHOOL00000331

**AUDIO FIDELITY** for phonograph records (*Audio Fidelity, Inc. v. London Records, Inc.*, 332 F.2d 577, 141 U.S.P.Q. 792 (C.C.P.A. 1965); and
**DIAL-A-MATRESS** for mattress sales (*Dial-A-Mattress Operating Corp. v. Mattress Madness*, 841 F. Supp. 1339.

In *Rapid Shave*, the Court ruled that RAPID-SHAVE was not merely descriptive for shaving cream, and in the same proceeding cancelled a registration for QUICK SHAVE for the same goods based on likelihood of confusion with RAPID-SHAVE.

In *Audio Fidelity*, the Court found AUDIO FIDELITY not to be descriptive, but only "suggestive" of phonograph records, despite the Trademark Trial and Appeal Board's conclusion below that:
"it is clear that, as defined, the word 'audio' means sound and that the word "fidelity" means faithfullness [sic]; that both terms have a well recognized meaning in the field of sound reproduction equipment.......It is also clear that terms synonymous with "audio fidelity", such as "sound fidelity" and "sonic fidelity" have been and still are frequently being used in the sound equipment field.." *Audio Fidelity*, *supra*, 322 F.2d 578-579.

In *Dial-A-Mattress*, Plaintiff was engaged in the business of selling mattresses to the public by soliciting telephone orders.    Despite the fact that the subject mark contained the elements "Dial" and "Mattress", the Court ruled that the mark DIAL-A-MATTRESS was not descriptive of Plaintiff's services, which enabled consumers to order mattresses by merely "dialing" the Plaintiff's telephone number.
Applicant respectfully submits that the mark MYSCHOOL is no more descriptive of Applicant's services than the RAPID-SHAVE, AUDIO FIDELITY and DIAL-A-MATTRESS marks are for the goods or services to which they relate.
<u>Doubts on the Issue of Descriptiveness Should Be Resolved in Favor of Applicant</u>
Finally, Applicant notes that the law is clear that any doubts on the issue of descriptiveness should be resolved in favor of the Applicant.   *In re Pennwalt Corporation*, 173 U.S. P.Q. 317 (T.T.A.B. ("DRI-FOOT" not merely descriptive of foot anti-perspirant.)
<u>CONCLUSION</u>

Based on the foregoing, Applicant respectfully submits that its MYSCHOOL mark is not "merely descriptive" of the goods identified in the Application, and therefore respectfully requests that the Section 2(e)(1) refusal be withdrawn.
Respectfully submitted,
Gregory F. Buhyoff
Weide & Miller, Ltd.
Attorneys for Applicant


**CLASSIFICATION AND LISTING OF GOODS/SERVICES**
**Applicant proposes to amend the following class of goods/services in the application:**
**Current:** Class 035 for Advertising via electronic media and specifically the internet; Advertising, including promotion relating to the sale of articles and services for third parties by the transmission of advertising material and the dissemination of advertising messages on computer networks; Providing a web site at which users can offer goods for sale and buy goods offered by others; Providing a web site that enables users to post items for sale through on-line classified advertisements; Providing a web site where users can post ratings, reviews and recommendations on products and services; Providing a web site which features advertisements for the goods and services of others on a global computer network; Providing information about the goods and services of others via the global computer network; Public advocacy to promote awareness of educational material

MYSCHOOL00000332

Original Filing Basis:
**Filing Basis: Section 1(b), Intent to Use:** The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services as of the filing date of the application. (15 U.S.C. Section 1051(b)).

**Proposed:** Class 035 for Advertising services, namely, advertising, promoting and offering information about the goods and services of others via a global communication network; providing a web site that enables users to post items for sale through on-line classified advertisements and messages;
**Filing Basis: Section 1(b), Intent to Use:** The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services as of the filing date of the application. (15 U.S.C. Section 1051(b)).

**Applicant proposes to amend the following class of goods/services in the application:**
**Current:** Class 038 for Communication services, namely, electronic transmission of data and documents among users of computers; Communications services, namely, transmitting streamed sound and audio-visual recordings via the Internet; Computer transmission of information accessed via a code or a terminal; Data communication by electronic mail; Delivery of messages by electronic transmission; Delivery of personalized greeting cards to others via electronic mail; Electronic message sending; Electronic message transmission; Electronic store-and-forward messaging; Electronic transmission of data and documents via computer terminals; Electronic transmission of messages and data; Electronic, electric, and digital transmission of voice, data, images, signals, and messages; Information transmission services via digital networks; Information transmission via electronic communications networks; Providing access to databases; Providing on-line chat rooms for transmission of messages among computer users concerning field of general interest field of general interest, and also containing interactive polling pages about entertainment and a wide variety of topics; Providing on-line communications links which transfer the website user to other local and global web pages; Providing on-line electronic bulletin boards for transmission of messages among computer users concerning field of general interest field of general interest, and also containing interactive polling pages about entertainment and a wide variety of topics; Providing on-line forums for transmission of messages among computer users concerning field of general interest field of general interest, and also containing interactive polling pages about entertainment and a wide variety of topics; Streaming of audio material on the Internet; Streaming of video material on the Internet; Transmission of messages over electronic media; Transmission of short messages; Transmission of sound and vision via satellite or interactive multimedia networks; Transmission of sound, picture and data signals; Transmission of sound, video and information
Original Filing Basis:
**Filing Basis: Section 1(b), Intent to Use:** The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services as of the filing date of the application. (15 U.S.C. Section 1051(b)).

**Proposed:** Class 038 for Communications services, namely, providing on-line chat rooms and forums for transmission of messages, photographs, information and data among computer users in the field of general interest, including among alumni of various educational institutions; Electronic transmission of information, messages, data, sound, images and documents among users of computers; Providing on-line communications links which transfer the website user to other local and global web pages electronic transmission of data and documents among users of computers; providing access to databases via a global communication network.
**Filing Basis: Section 1(b), Intent to Use:** The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services as of the filing date of the application. (15 U.S.C. Section 1051(b)).

MYSCHOOL00000333

**SIGNATURE(S)**
**Response Signature**
Signature: /Gregory F. Buhyoff/      Date: 01/06/2008
Signatory's Name: Gregory F. Buhyoff
Signatory's Position: Attorney of record

The signatory has confirmed that he/she is an attorney who is a member in good standing of the bar of the highest court of a U.S. state, which includes the District of Columbia, Puerto Rico, and other federal territories and possessions; and he/she is currently the applicant's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S. attorney or a Canadian attorney/agent not currently associated with his/her company/firm previously represented the applicant in this matter: (1) the applicant has filed or is concurrently filing a signed revocation of or substitute power of attorney with the USPTO; (2) the USPTO has granted the request of the prior representative to withdraw; (3) the applicant has filed a power of attorney appointing him/her in this matter; or (4) the applicant's appointed U.S. attorney or Canadian attorney/agent has filed a power of attorney appointing him/her as an associate attorney in this matter.


Serial Number: 77137273
Internet Transmission Date: Sun Jan 06 18:23:15 EST 2008
TEAS Stamp: USPTO/ROA-208.57.203.177-200801061823151
34946-77137273-410a68eacbb9f9dcd9d3bb145
a03e795ef4-N/A-N/A-20080106180807194592

MYSCHOOL00000334