REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

JOSEPH L. CARPENTER,

     Plaintiff,

v.

MYSCHOOL.COM, an Internet Domain
Name,

     Defendant.

Case no. 1:15cv212-JFA

## OPPOSITION TO PLAINTIFF'S
## CROSS-MOTION FOR SUMMARY JUDGMENT

Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (Pro Hac Vice)
Ari S. Meltzer (Pro Hac Vice)
Rebecca L. Saitta (VA Bar No. 65408)
Brian H. Pandya (VA Bar No. 72233)

WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wileyrein.com
dweslow@wileyrein.com
rsaitta@wileyrein.com

Counsel for Defendant MYSCHOOL.COM

# TABLE OF CONTENTS

**Page**

I.   Preliminary Statement ........................................................................... 1

II.   RESPONSE TO PLAINTIFF'S ALLEGED UNDISPUTED FACTS ................................... 2

III.   Plaintiff is Not Entitled to Summary Judgment........................................................ 7

   A.   Plaintiff's Trademark Registration is *Void Ab Initio* and Unenforceable ........................ 8

   B.   Plaintiff Cannot Establish that OWV Acted With a Bad Faith Intent to Profit Specifically From Plaintiff's Mark .......................................................... 11

   C.   Plaintiff's Alleged Mark Was Neither Distinctive Nor Famous When OWV Registered the MYSCHOOL.COM Domain Name.................................................... 16

IV.   OWV's Registration and Use of the MYSCHOOL.COM Domain Name is Protected Under the ACPA Safe Harbor and as a Statutory Fair Use .................................................... 18

V.   Defendant, Not Plaintiff, is Entitled to Attorney's Fees........................................................ 19

VI.   Conclusion ...................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Academy of Motion Picture Arts and Sciences v. GoDaddy.com, Inc.*,
   No. 13-cv-8458, 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) ......................................16, 19

*Am. Online, Inc. v. AT&T Corp.*,
   243 F.3d 812 (4th Cir. 2001) ................................................................................................16

*Edge Games, Inc. v. Elec. Arts, Inc.*,
   745 F. Supp. 2d 1101 (N.D. Cal. 2010) ...............................................................................10

*Emergency One, Inc. v. Am. FireEagle, Ltd.*,
   228 F.3d 531 (4th Cir. 2000) ................................................................................................10

*Ford Motor Co. v. Greatdomains.Com, Inc.*,
   177 F. Supp. 2d 635 (E.D. Mich. 2001) ...............................................................................12

*George & Co. LLC v. Imagination Entm't Ltd.*,
   575 F.3d 383 (4th Cir. 2009) ................................................................................................10

*H. Jay Spiegel & Associates, P.C. v. Spiegel*,
   652 F. Supp. 2d 639 (E.D. Va. 2009) *aff'd*, 400 F. App'x 757 (4th Cir. 2010) .......................17

*Harrods Ltd. v. Sixty Internet Domain Names*,
   110 F. Supp. 2d 420 (E.D. Va. 2000) ...................................................................................15

*Harrods Ltd. v. Sixty Internet Domain Names*,
   302 F.3d 214 (4th Cir. 2002) ................................................................................................16

*Lamparello v. Falwell*,
   420 F.3d 309 (4th Cir. 2005) ...........................................................................................14, 16

*OBX–Stock, Inc. v. Bicast, Inc.*,
   558 F.3d 334 (4th Cir. 2009) ..................................................................................................9

*Pizzeria Uno Corp. v. Temple*,
   747 F.2d 1522 (4th Cir. 1984) ...........................................................................................9, 17

*Retail Servs., Inc. v. Freebies Publ'g*,
   364 F.3d 535 (4th Cir. 2004) ................................................................................................16

*Salmons, Inc. v. First Citizens Bank & Trust Co.*,
   No. 2:10CV72, 2011 WL 4828838 (E.D. Va. Oct. 11, 2011) ....................................... 6, 14-15

iii

*Scotch Whisky Ass'n v. Majestic Distilling Co.*,
    958 F.2d 594 (4th Cir. 1992) ...............................................................19

*Teal Bay Alliances, LLC v. Southbound One, Inc.*,
    No. MJG-13-2180, 2015 WL 401251 (D. Md. Jan. 26, 2015) ................................10

*Tie Tech, Inc. v. Kinedyne Corp.*
    296 F.3d 778, 783 (9th Cir. 2002) ........................................................11

*Tober v. APROV.COM*,
    No. 1:07CV1252, 2008 WL 4364221 (E.D. Va. Sept. 23, 2008) ...........................11

*Web Entm't Ltd. v. y8.org*,
    1:14-cv-1416-CMH-IDD (Apr. 8, 2015) (ECF No. 39) .....................................18

**Statutes**

15 U.S.C. § 1115 ..............................................................................19

15 U.S.C. § 1125 ........................................................................7, 12, 18

15 U.S.C. § 1127 ..............................................................................11

ACPA ................................................................................... *passim*

Lanham Act ............................................................................ *passim*

**Other Authorities**

Fed. R. Evid. 609(b) ......................................................................6, 15

Sen. Rep. No. 106–140 .........................................................................16

McCarthy on Trademarks and Unfair Competition ....................................... 3, 13, 15-16

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| JOSEPH L. CARPENTER,<br><br>　　　Plaintiff,<br><br>v.<br><br>MYSCHOOL.COM, an Internet Domain Name,<br><br>　　　Defendant. | Case no. 1:15cv212-JFA |

**OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant MYSCHOOL.COM ("Defendant"), by counsel, hereby opposes Plaintiff's Cross-Motion for Summary Judgment (the "Cross-Motion"). For the reasons set forth below, in Defendant's Motion for Summary Judgment ("Defendant's Motion"), and in Defendant's Reply in Support of Its Motion for Summary Judgment ("Defendant's Reply"), Defendant is entitled to judgment as a matter of law in its favor, to dismissal of Plaintiff's Complaint in its entirety, and to an award of fees and costs incurred.

## I.　　PRELIMINARY STATEMENT

Even if Plaintiff's Complaint could somehow survive Defendant's Motion, his remaining case is premised on speculative assertions unsupported by the record and dubious legal conclusions. Among the issues that Plaintiff simply cannot establish are: (1) that Plaintiff's trademark was validly obtained; (2) that the registrant registered or used the MYSCHOOL.COM domain name with a bad faith intent to profit *from Plaintiff's mark*; and (3) that Plaintiff's mark

1

was distinctive in 2013, when Original Web Ventures ("OWV") registered the MYSCHOOL.COM domain name.  And, in addition to these hurdles, Plaintiff still cannot dispute that OWV: (1) reasonably believed that its use of the MYSCHOOL.COM domain name was fair and lawful; and (2) has used the alleged MYSCHOOL mark for a purpose other than as a trademark or service mark.  Accordingly, Plaintiff's Cross-Motion should be denied.

## II.    RESPONSE TO PLAINTIFF'S ALLEGED UNDISPUTED FACTS

Although there is no material factual dispute for trial, Plaintiff's statement of undisputed "facts" (the "PUDFs") is littered with erroneous recitals of the actual facts in this case and wildly inappropriate legal conclusions and assumptions made from those facts.  Defendant incorporates the Statement of Undisputed Facts from the Memorandum in Support of Defendant's Motion for Summary Judgment (ECF. No 123) ("DUDFs") as if set forth herein.  Defendant further provides these responses to the PUDFs as follows:

**RESPONSE:**

1.      In response to PUDF 1, there is no genuine issue regarding the fact that the United States Patent and Trademark Office ("USPTO") awarded Plaintiff a trademark registration for the mark MYSCHOOL in 2009.  However, for the reasons stated below, Defendant disputes Plaintiff's legal conclusion that the trademark is "valid."  The uncontested facts supporting the invalidity of Plaintiff's trademark include DUDFs 4-17.  Moreover, even a valid registration does not provide the broad scope of exclusivity asserted by Plaintiff.  DUDFs 2-3 and 27-28 support the notion that the scope of Plaintiff's trademark rights is limited and does not extend to the challenged registration of the MYSCHOOL.COM domain name.

2.      In response to PUDF 2, there is no genuine factual dispute.

3.      In response to PUDF 3, there is no genuine factual dispute.

4.      In response to PUDF 4, there is no genuine factual dispute.

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

5.      In response to PUDF 5, there is no genuine issue regarding the fact that OWV is wholly owned by Yonatan Belousov or that Mr. Belousov is a resident of Canada.  However, the remaining statements in PUDF 5 are not supported by the record.  First, Mr. Belousov is not OWV's only employee.  *See* Transcript of Deposition of Yonatan Belousov 8:12-17 (Aug. 14, 2015) ("Belousov Depo. Tr."), attached hereto as **Exhibit A**.  Additionally, it is misleading to say that Mr. Belousov "makes his living primarily by buying and selling these domain names" when the record establishes that OWV also provides consulting services, runs websites, manages affiliate programs, and otherwise monetizes domain names.  *Id.* at 11:3-15:10.

6.       In response to PUDF 6, there is no genuine issue regarding the fact that Exhibit F to the Cross-Motion reflects the 494 domain names sold by OWV[1] between May 1, 2014 and April 30, 2015.  PUDF 6 misstates the number of domain names sold and the timeframe in which they were sold.

7.      In response to PUDF 7, there is no genuine issue of material fact that of the 494 domain names listed in Exhibit F to the Cross-Motion, some correspond to generic or descriptive terms for which third parties have also obtained trademark registrations directed to specific goods and services, i.e., non-generic or descriptive uses of the words.  The chart included as Exhibit G to the Cross-Motion is hearsay and not supported by documents produced in discovery.

8.      In response to PUDF 8, there is no genuine issue regarding the fact that Mr. Belousov testified that the domain names that he owns correspond to generic or descriptive "dictionary" terms that could have corresponding trademark registrations for use with specific

---

[1] Despite the implication by Plaintiff, there is nothing improper or illegal about buying and selling domain names, just as businesses buy and sell other types of tangible and intangible property.  5 McCarthy on Trademarks and Unfair Competition § 25A:61 (4th ed.) ("Caution should be exercised, for the mere registration of multiple domain names for resale does not per se mark one as a cybersquatter").

goods and services.  Plaintiff misstates Mr. Belousov's testimony by suggesting that the domain names themselves are trademarked or that the rights conferred by the referenced trademarks extend to OWV's generic and/or descriptive uses of the domain names.

9.      In response to PUDF 9, there is no genuine issue regarding the fact that OWV has received a small number of cease and desist letters out of the tens of thousands of domain names that it has registered.  Plaintiff mischaracterizes the cited testimony, which refers to only two letters, to say that OWV has been accused of cybersquatting by "numerous parties in connection with domain names it owns."  Moreover, Plaintiff omits the fact that OWV's counsel refuted the allegations in these cease and desist letters and the putative claimants did not press their claims.

10.     In response to PUDF 10, there is no genuine issue regarding the fact that OWV was named as a respondent in three UDRP proceedings (excluding that brought by Plaintiff). However, Plaintiff misstates the record by contending that "OWV was found to be cybersquatting in all previous UDRP cases."  Exhibit J to Plaintiff's Cross-Motion is the decision in the *Krea Icerik* case, which stated on page 2 that "on March 19, 2013, after the case was commenced, the Registrar notified the National Arbitration Forum that the Registrar had disclosed the wrong Whois information; the correct Whois information listed Sherene Blackett of Abstract Holdings International Ltd, as the registrant."  OWV was never a proper party to that proceeding and had long since been dismissed when the decision was rendered.  Moreover, as Plaintiff well knows, ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████ MYSCHOOL00000661-62, attached hereto as **Exhibit B**.  Thus, the undisputed material facts show that OWV has only a

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

single binding UDRP decision against it (from Plaintiff's early days in the domain name business nearly eight years ago), not three, as continuously misstated by Plaintiff.

11.     In response to PUDF 11, there is no genuine factual dispute.

12.     In response to PUDF 12, there is no genuine issue regarding the fact that the USPTO awarded Plaintiff a trademark registration for the mark MYSCHOOL in 2009. However, for the reasons stated below, Defendant disputes Plaintiff's legal conclusion that the trademark provides "constructive notice" for the purpose of a claim under the ACPA. The undisputed facts supporting OWV's lack of knowledge include DUDFs 24-26.

13.     In response to PUDF 13, there is no genuine issue regarding the content of the e-mail quoted by Plaintiff. However, the sequence of events documented in this and subsequent e-mails supports Mr. Belousov's testimony that OWV did not become aware of Plaintiff's use of the term MySchool until Plaintiff filed his second UDRP complaint. Specifically, Plaintiff's second attorney sent a copy of the UDRP complaint to OWV on September 4, 2014 at 12:03 p.m. ET. MYSCHOOL00000695, attached hereto as **Exhibit C.** Mr. Belousov testified at his deposition that upon receiving a copy of this complaint, he spoke with his attorney and learned that Plaintiff previously had brought a similar UDRP action against the prior owner of the domain name, Andy Booth. *See* Belousov Depo. Tr. 55:2-57:12. Accordingly, Mr. Belousov contacted Mr. Booth to request materials from the earlier UDRP proceeding. *Id.* 55:16-56:1. Mr. Belousov sent the e-mail to Mr. Booth at 1:52 p.m. ET—nearly two hours after he received a copy of the complaint. *See* Exhibit K to the Cross-Motion. Accordingly, the documents produced in this matter corroborate the sworn testimony that OWV had no prior knowledge of Plaintiff or his use of the term MySchool when OWV received a copy of the UDRP complaint filed by Plaintiff against OWV. Plaintiff's contrary conclusion—that the aforementioned e-mail

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

"demonstrates actual notice of Plaintiff's trademark by OWV"—is not only speculative, but contrary to the documents and to Mr. Belousov's unchallenged testimony.

14.     In response to PUDF 14, there is no genuine factual dispute.  Defendant disputes any insinuation, however, that these facts reflect knowledge by OWV about Plaintiff or Plaintiff's website prior to receiving the UDRP complaint that same day.

15.     In response to PUDF 15, Plaintiff's assertion that his ACPA claim is supported by Mr. Belousov's purportedly having been banned from an Internet website demonstrates Plaintiff's desperation to establish even a semblance of bad faith.  The hearsay statement is from an undated document that appears to be 10-15 years old, and that, even if admissible, would be irrelevant to Mr. Belousov's more recent, unrelated conduct and immaterial to the instant motion.  *Cf.* Fed. R. Evid. 609(b); *Salmons, Inc. v. First Citizens Bank & Trust Co.*, No. 2:10CV72, 2011 WL 4828838, at *2 (E.D. Va. Oct. 11, 2011) ("Rule 609(b) . . . establishes a robust presumption against admitting stale convictions.").

16.     In response to PUDF 16, there is no genuine issue regarding the facts that: (1) OWV has utilized at least two different registrars for the MYSCHOOL.COM domain name; and (2) OWV has utilized a privacy service part of the time he has owned the MYSCHOOL.COM domain name.  Plaintiff misconstrues the cited testimony, however, which indicates that OWV has only used two different domain registrars (Moniker and Uniregistry), not three as Plaintiff suggests.  Moreover, although Plaintiff utilized Uniregistry's privacy service, as a legal matter, this did not "change the registrant."  In fact, at his deposition, Plaintiff renounced the false claim in his complaint that the legally effective registration date was in 2014 and conceded that OWV has owned the domain name since 2013.  *See* Transcript of Deposition of Joseph L. Carpenter (Aug. 13, 2015) 221:9-222:10 ("Carpenter Depo. Tr."), attached hereto as **Exhibit D**.

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

17.     In response to PUDF 17, there is no genuine issue regarding the facts that: (1) the website displayed at MYSCHOOL.COM includes advertisements provided by Google; and (2) Defendant makes approximately $700 per month from advertisements on the website displayed at MYSCHOOL.COM.  Plaintiff disputes the characterization of Exhibits M and N as reflecting "advertisements of third parties on a generic landing page to which the Disputed Domain resolves."  The keywords appearing on the landing page displayed at MYSCHOOL.COM all relate to the descriptive term "my school."  Belousov Depo. Tr. 72:17-73:8.  The exhibits to the Cross-Motion show not this page, but the results of Plaintiff's search on MYSCHOOL.COM for terms that trigger certain Google provided links.  These screen shots plainly show that Plaintiff used the Google search function to manipulate the site content by displaying advertising search results rather than the descriptive information that OWV has selected to provide on the site in the absence of Plaintiff's manipulation.

18.     In response to PUDF 18, there is no genuine issue regarding the fact that Defendant voluntarily dismissed its counterclaims on June 30, 2015.  However, as explained below, this does not mean that "there are no claims pending for invalidity or cancellation of Plaintiff's Mark."  In other words, the Counterclaim was only one method by which Defendant sought invalidation of Plaintiff's trademark.  *See* Answer at 4-5 (ECF No. 7).

## III.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT

To establish a *prima facie* case of cybersquatting under the ACPA, a plaintiff must prove first that he has a valid and enforceable mark and then that the registrant both: (i) has a bad faith intent to profit from the plaintiff's legitimate trademark; and (ii) registers, traffics in, or uses a domain name that is (a) identical or confusingly similar to a distinctive mark, (b) identical, confusingly similar to, or dilutive of a famous mark, or (c) one of an enumerated list of defined marks (inapplicable here).  *See* 15 U.S.C. § 1125(d)(1)(A).  Plaintiff faces numerous

insurmountable barriers to establishing a *prima facie* case of cybersquatting.  Even if he could

establish a *prima facie* case, Plaintiff still would not be entitled to summary judgment, as the

registrant's actions are protected under both the ACPA safe harbor and as a statutory fair use.

There are at least three independent reasons why Plaintiff cannot establish a *prima facie*

case of cybersquatting under the ACPA.  *First*, Plaintiff does not have a valid and enforceable

trademark.  Plaintiff admittedly made material misrepresentations to the USPTO in connection

with his trademark application that render the awarded trademark registration *void ab initio*.

*Second*, the uncontested facts do not support a finding that OWV acted with a bad faith intent to

profit from *Plaintiff's specific mark* when it registered or used the MYSCHOOL.com domain

name.  *Third*, Plaintiff's domain name was neither distinctive nor famous at the time that OWV

registered the domain name.

Even if Plaintiff somehow could establish a *prima facie* case, OWV's registration and use

of the domain name was proper under both the ACPA safe harbor and as a statutory fair use.

When registering and using the domain name, OWV believed and had a reasonable basis to

believe that its use was fair and lawful.  Moreover, given the generic or descriptive nature of the

term "my school," Defendant's use of the domain name solely in connection with that generic or

descriptive meaning is a protected fair use under the Lanham Act.

In light of the foregoing, Plaintiff's Cross-Motion should be denied.

### A.    Plaintiff's Trademark Registration is *Void Ab Initio* and Unenforceable

Plaintiff does not have a valid trademark registration upon which to base his claim of

cybersquatting.  Plaintiff argues at great length that his trademark is not invalid because: (i) it is

entitled to a presumption of validity; (ii) the trademark was found to be suggestive by the

USPTO; and (iii) the Court is not bound to follow the prior UDRP decisions involving the

MYSCHOOL.COM domain name.  It is not necessary for Defendant to dispute any of these

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

points for the Court to find that the trademark is invalid.  It is well-settled that the validity of a trademark can be raised as an affirmative defense.  *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir. 1984) ("The presumption . . . does not preclude one charged with infringement from collaterally attack[ing] in an infringement action, either by way of an affirmative defense or by way of a counterclaim seeking cancellation of the registration.") (internal quotation marks omitted).  Here, the trademark is invalid based on the submission of altered specimens to the USPTO, which Plaintiff has conceded, and because Plaintiff failed to use the trademark as of the sworn date of first use.

Plaintiff's attempt to preclude the use of the generic or descriptive term "myschool" on the basis of his invalid registration is an act of "unclean hands" and provides another basis for the Court to grant Defendant's motion and to order cancellation of Plaintiff's mark.  Section 1119 of the Lanham Act provides the Court, in "any action involving a registered mark," with the authority to "determine the right to registration" and "order the cancellation of registrations." 15 U.S.C. § 1119.  Although the registration of Plaintiff's mark is *prima facie* evidence of its validity, this "does not shift the burden of persuasion on validity, merely the burden of production." *OBX–Stock, Inc. v. Bicast, Inc.*, 558 F.3d 334, 342 (4th Cir. 2009) (citing 15 U.S.C. 1057(b)).

In support of its Motion for Summary Judgment, Defendant asserted at least two specific reasons why Plaintiff's registration is invalid as a matter of law: (i) the specimens that Plaintiff submitted in support of his sworn statement of use were inauthentic and/or fabricated; and (ii) Plaintiff failed to use the asserted trademark in commerce in association with all of the goods and services recited in the registration as of the date set forth in the sworn declaration.  *See* Pl.'s Memo. at 22-28 (ECF No. 143).

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

First, Plaintiff admitted in his sworn testimony that specimens he submitted with his statement of use do not show "the mark as used in commerce" because they were modified prior to their submission to appear as if the specimens included actual use in commerce of "Myschool.com."   *See* DUDF 14 (Carpenter Depo. Tr. 108:4-19; 110:5-10).   Plaintiff's submission of an inauthentic specimen in support of his statement of use "raises serious questions regarding the veracity of" Plaintiff's sworn declaration. *See Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1108-13 (N.D. Cal. 2010); *Teal Bay Alliances, LLC v. Southbound One, Inc.*, No. MJG-13-2180, 2015 WL 401251, at *4 (D. Md. Jan. 26, 2015) (ordering cancellation of mark premised on specimen that was inconsistent with actual use in commerce).   Based on Plaintiff's admission that the specimen was altered, and his improper indication to the U.S. Patent and Trademark Office that his website was displayed at the domain name MYSCHOOL.COM, the Court should order the registration cancelled. *See Edge Games,* 745 F. Supp. 2d at 1115 (finding that the plaintiff had not "demonstrated a likelihood of success in proving that the asserted marks are valid"); *Teal Bay Alliances,* 2015 WL 401251 at *10 (ordering cancellation of mark based on failure of specimen to reflect use in commerce).

Moreover, the undisputed facts demonstrate that Plaintiff was not using the MYSCHOOL mark in commerce in association with each good and service in Plaintiff's trademark application as of the date of his statement of use.  A party is not entitled to trademark rights based on a token use of the mark. *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000). Rather, to obtain trademark priority, "the mark must be used to identify the source of the goods to potential customers."  *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009).  Although the use of a mark on a website may prove sufficient, the "key is whether the designation claimed as a protectable mark has been used to make such a visual impression

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

that the viewer would see it as a symbol of origin separate and apart from anything else." *Tober v. APROV.COM*, No. 1:07CV1252 (LMB/TCB), 2008 WL 4364221, at *2 (E.D. Va. Sept. 23, 2008) (quoting McCarthy on Trademarks and Unfair Competition § 7:17.50, at 7–38).

Here, the undisputed facts show that Plaintiff's use of the mark on December 8, 2008, was nothing more than "token use" at best.  For trademark purposes, a use in commerce must include "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark."  15 U.S.C. § 1127.  DUDFs 4-17 demonstrate that Plaintiff was merely rushing to make token use of the mark before the expiration of Plaintiff's intent to use application, not actually using the mark in commerce.  For example, several e-mails in the days leading up to Plaintiff's sworn declaration of use discussed whether the site was functional enough "for the attorney."  *See* DUDFs 6-7, 10.  By December 8, 2008—Plaintiff's sworn date of first use in commerce—his website had just 20-30 users, about half of whom were helping to develop the site, with the remaining 10-15 "probably all connected to the 10 to 15 that were helping . . . build the site."  *See* DUDF 11 (Carpenter Depo. Tr. 123:20-124:16).  Because Plaintiff's use was "merely to reserve a right in a mark" and not "the bona fide use of a mark in the ordinary course of trade," as required under the Lanham Act, his registration is *void ab initio* and cannot be enforced in this proceeding.

### B.   Plaintiff Cannot Establish that OWV Acted With a Bad Faith Intent to Profit Specifically From Plaintiff's Mark

Plaintiff's allegations of bad faith surpass hyperbole and raise potential Rule 11 issues based on the level of misrepresentation involved.  Plaintiff's arguments also reflect a fundamental misunderstanding of the nature of trademark rights and the scope of the ACPA.

Plaintiff's sole reliance on an analysis of the non-exclusive statutory bad faith factors is mistaken and indeed establishes that his Cross-Motion cannot succeed.  As discussed in

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

Defendant's Memorandum in Support of Its Motion for Summary Judgment, the ACPA specifically requires a showing that the registrant acted with "a bad faith intent to profit <u>from that mark</u>."  15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added); *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, 643 (E.D. Mich. 2001).  The textual reference to "that mark" requires an intent to profit from a particular mark (i.e., the plaintiff's), and a registrant cannot intend to profit from a mark of which it has no knowledge.  Thus, before the Court can even reach the statutory bad faith factors, it must first satisfy itself that OWV knew of Plaintiff's use of the mark when it registered the MYSCHOOL.COM domain name.

The Cross-Motion relegates OWV's knowledge to a single, unsupported statement that the "Defendant has been shown to have both actual and constructive knowledge of the Mark before registering the Disputed Domain."  Cross-Motion at 11.  This is plainly false.  *First*, the undisputed facts establish that Yonatan Belousov, the owner and Chief Executive Officer of OWV, did not become aware of Plaintiff's use of the term "myschool" until Plaintiff "brought a UDRP action against OWV" on September 4, 2014.  *See* DUDP 26 (citing Belousov Depo. Tr. 52:6-52:14; 55:15-56:9).  As explained above and in Defendant's Reply, the single e-mail exchange cited by Plaintiff from ***after*** OWV received notice of the UDRP proceeding against it only supports Defendant's claim that OWV was not aware of Plaintiff's use of the term MySchool until it received notice of the complaint.  Moreover, as Defendant has explained and Plaintiff has not disputed, neither the text of the ACPA nor its legislative history support a "constructive bad faith" theory.  *See* Def.'s Memo. at 11-14.

The case cited by Plaintiff, *March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc.*, does not stand for a different result.  Pl.'s Opp'n at 19 (citing 162 F. Supp. 2d 560, 573 (N.D. Tex. 2001)).  There, the defendants purchased the domain name marchmadness.com with knowledge

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

of the trademark and an intent to develop a website about the March Madness basketball tournament. *March Madness Athletic Ass'n, L.L.C,* 162 F. Supp. 2d. at 565. However, at some time after registering the mark, the defendants became aware of a Seventh Circuit decision that "raise[d] a question" about whether their continued use of the domain name was fair or lawful. *Id* at 573. Thus, it was the continued use of the mark that raised concerns about bad faith. Here, as explained further below, OWV learned of Plaintiff and his website through UDRP proceedings that only served to further validate his belief that using the domain name was fair and lawful by rejecting Plaintiff's claims.

Even if the Court were to, nevertheless, reach the statutory bad faith factors, there are many reasons why it cannot find that OWV acted in bad faith. Although OWV does not claim trademark rights in the MYSCHOOL.COM domain name and MYSCHOOL.COM is not OWV's legal name or a name commonly used to describe OWV, the inferences in favor of Plaintiff end there. As Professor McCarthy has observed:

> Caution should be exercised, for the mere registration of multiple domain names for resale does not per se mark one as a cybersquatter. One may be in a justifiable business of reserving many domain names. For example, in one case defendant legitimately registered thousands of domain names for resale as "vanity" e-mail addresses which consisted of common surnames, names of hobbies, careers, pets, sports interests, and music. The fact that some of these resembled prominent trademarks did not make defendant a cybersquatter.

5 McCarthy on Trademarks and Unfair Competition § 25A:61 (4th ed.) (citing *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999)).

Plaintiff's failure to discuss each of the statutory factors makes it impossible for the Court to conduct the necessary "careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Lamparello v. Falwell*, 420 F.3d 309, 320 (4th Cir. 2005).

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

Nevertheless, even the factors cited by Plaintiff are either contrary to the undisputed facts or reflect a misapplication of the statutory factors.  For example:

- Plaintiff repeats the baseless allegation that Defendant has "a history [of] numerous lost cybersquatting actions and cease and desist letters," Cross-Motion at 11, when, as explained above, Plaintiff's own documents reflect that this is untrue, and OWV has only a single binding UDRP decision against it (from Plaintiff's early days in the domain name business nearly eight years ago) and with a dissenting opinion, despite the fact that OWV has registered tens of thousands of domain names.  This is clearly not the record of a cybersquatter.

- Plaintiff's claim that OWV has sold "trademarked domain names," *id.*, ignores the generic or descriptive nature of the names at issue (*i.e.*, GeorgeWashington.org, which corresponds both to the first president of the United States and a university with limited trademark rights).  Under Plaintiff's theory, at least nine of the top ten Fortune500 companies would be committing cybersquatting based on their registration of domain names that correspond to a third-party's registered trademark, such as Walmart's George.com and GM's GlobalFleetSales.com.  *See* **Exhibit E**.

- The unrelated contention that Mr. Belousov previously was banned from an Internet website is neither admissible nor uncontested.  The hearsay statement is from an undated document that appears to be 10-15 years old, and that, even if admissible, would be irrelevant to Mr. Belousov's more recent, unrelated conduct and immaterial to the instant motion.  *Cf.* Fed. R. Evid. 609(b); *Salmons, Inc.*, 2011 WL 4828838, at *2 ("Rule 609(b) . . . establishes a robust presumption against admitting stale convictions.").

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

- The notion that Defendant is "diverting customers from the mark owner's online location," Cross-Motion at 11, is laughable when Plaintiff has admitted that his site is not included in the first ten Google search results for the terms "myschool" "myschool iTunes" or "myschool google play." DUDPs 39-41 (citing Pl.'s Response to Def.'s Req. for Admis. Nos. 140-41, 145-46, and 149-50; Carpenter Depo. Tr. 217:2-7).

- Plaintiff offers no support for the suggestion that OWV provided "material and misleading false contact information." Cross-Motion at 11. Notwithstanding the fact that OWV at one time used a privacy guard, which is a standard practice and offered at no charge by the registrar, Plaintiff does not allege (nor could he) that the service failed to "leave an accurate forwarding address," which this Court acknowledged in a case cited by Plaintiff, is sufficient. *See Harrods Ltd. v. Sixty Internet Domain Names*, 110 F. Supp. 2d 420 (E.D. Va. 2000). Plaintiff knew exactly who owned the domain name at issue here, but chose to proceed on an alleged privacy theory in a manufactured attempt to bolster his case.

Perhaps recognizing the weakness of his bad faith claim, Plaintiff turns to a novel argument that "[b]ad faith is not required in *in rem* cases." Cross-Motion at 12. In support of his position, Plaintiff references the jurisdictional provisions of Section 1125(d)(2)(A), which confirm that trademark holders may invoke *in rem* jurisdiction to assert a substantive claim under the Lanham Act. *See* 5 McCarthy on Trademarks and Unfair Competition § 25A:74 (4th ed.) ("To establish a case and a remedy via in rem jurisdiction, the Act requires the plaintiff to plead and prove two elements: (1) The substantive case; and (2) The inadequacy of personal jurisdiction."). As the Fourth Circuit has recognized, the *in rem* provision applies to any substantive violation of the Lanham Act. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

F.3d 214, 232 (4th Cir. 2002); Sen. Rep. No. 106–140, at 10–11 (1999); 5 McCarthy on Trademarks and Unfair Competition § 25A:74 (4th ed.) (identifying four possible violations that a Plaintiff can assert).   In this case, however, Plaintiff has asserted only a single claim under Section 1125(d)(1), which requires bad faith intent to profit.  *See, e.g., Lamparello v. Falwell*, 420 F.3d 309, 320 (4th Cir. 2005) (explaining that bad faith intent to profit is "essential to a successful cybersquatting claim"); *Academy of Motion Picture Arts and Sciences v. GoDaddy.com, Inc.*, No. 13-cv-8458, 2015 WL 5311085, at *22-26 (C.D. Cal. Sept. 10, 2015) ("[T]he plaintiff must prove a defendant *subjectively* intended to profit from the *specific mark* at issue *in bad faith*") (emphasis in original).   Thus, Plaintiff's failure to establish OWV's bad faith is fatal to his claim.

### C.    Plaintiff's Alleged Mark Was Neither Distinctive Nor Famous When OWV Registered the MYSCHOOL.COM Domain Name

Plaintiff offers no facts in support of the alleged distinctiveness of his MYSCHOOL mark aside from the fact of his registration alone.  Although a certificate of registration supplies the registrant with *prima facie* evidence that its mark "at a minimum is descriptive and has obtained secondary meaning," this merely satisfies the Plaintiff's initial burden; it remains subject to rebuttal.  *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816-18 (4th Cir. 2001); *see also Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) ("In trademark terms, the registration is not absolute but subject to rebuttal" and "discharges the plaintiff's original common law burden of proving validity in an infringement action.").   "The burden shifted by the presumption is one of production rather than persuasion."  *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004) (citing Fed. R. Evid. 301).

Here, the USPTO, on July 9, 2007, issued an Office Action refusing registration on the principal register because the mark was "merely descriptive" in that it "merely describes the

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

services."   DUDP 2.  Although the USPTO withdrew its objection on the apparent basis that the mark is "suggestive," this does not preclude a finding that the mark is not suggestive and therefore must have acquired distinctiveness.  *H. Jay Spiegel & Associates, P.C. v. Spiegel*, 652 F. Supp. 2d 639, 647 (E.D. Va. 2009) *aff'd*, 400 F. App'x 757 (4th Cir. 2010) ("In short, the USPTO's apparent acceptance of Plaintiff's mark as 'suggestive' does not bar Defendant from arguing that the mark is not suggestive, and Plaintiff's attempt to use registration of the mark to foreclose such an argument is misplaced.").

As the Fourth Circuit has recognized, the line between a "descriptive" mark and a "suggestive" one is thin:

> [A] word or figure is descriptive if it identifies a characteristic or quality of an article or service, and a suggestive term is one which suggests rather than describes, some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of these goods.

*Pizzeria Uno Corp.*, 747 F.2d at 1528 (internal quotation marks omitted).   In his sworn deposition testimony, Plaintiff described his use of the mark as "a forum for anybody to comment on how their performance of their school, about their school, about their teachers." Carpenter Depo. Tr. 169:11-14.  Thus, the term "my school" identifies the central characteristic of the service, as the information on the site is all about a particular individual's school (*i.e.*, "my school").

A determination that the mark is descriptive would be dispositive here, where Plaintiff cannot establish secondary meaning as of the date that the mark was registered, when it had no more than 30 users, about half of whom were helping to develop the site and the remainder of whom were connected to those persons.  *See* DUDF 11 (Carpenter Depo. Tr. 123:20-124:16). Accordingly, Plaintiff's Cross-Motion should be denied on this ground alone.

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

## IV.   OWV'S REGISTRATION AND USE OF THE MYSCHOOL.COM DOMAIN NAME IS PROTECTED UNDER THE ACPA SAFE HARBOR AND AS A STATUTORY FAIR USE

Even if Plaintiff could somehow establish a *prima facie* case of cybersquatting under the ACPA, the Court must nevertheless deny Plaintiff's Cross-Motion given the strength of Defendant's affirmative defenses: (1) that OWV reasonably believed that its use of the MYSCHOOL.COM domain name was a fair use or otherwise lawful; and (2) that OWV has only used the domain names in connection with the generic or descriptive meaning of the term "my school."

As an initial matter, Plaintiff offers no support for his argument that a res defendant cannot raise affirmative defenses.  Plaintiff's argument seems to be that the presence of the affirmative defenses will confuse the Court, which is nonsensical given that the parties have elected a bench trial.  Moreover, res defendants regularly raise affirmative defenses, including in at least one case involving Plaintiff's current counsel.  *See* Answer to Complaint, *Web Entm't Ltd. v. y8.org*, 1:14-cv-1416-CMH-IDD (Apr. 8, 2015) (ECF No. 39) (asserting 16 affirmative defenses).

More importantly, the affirmative defenses asserted by Defendant are substantively valid and justify OWV's actions.  Under the ACPA's safe-harbor provision, "[b]ad faith intent ... shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).  As explained in Defendant's Memorandum in Support of its Motion for Summary Judgment , there are several reasons why OWV both "believed and had reasonable grounds to believe" that the use of the MYSCHOOL.COM domain name was a fair use or otherwise lawful: (1) OWV's efforts to assess the generic nature of the domain name; (2) the domain name's composition as a combination of common nouns; and (3) the two UDRP

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

proceedings that recognized the right of a third party to use the MYSCHOOL.COM domain name, notwithstanding Plaintiff's trademark.  Def.'s Memo. at 16-19.

Furthermore, the Lanham Act provides that a non-registrant junior user may use a registered trademark as long as it is a "use, otherwise than as a [trade or service] mark, ... of a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin."  15 U.S.C. § 1115(b)(4).  As Defendant explained in its Memorandum in Support of Defendant's Motion for Summary Judgment—and Plaintiff did not dispute—because OWV has used the term "myschool" only in connection with its descriptive meaning, it is entitled to a finding that such use constitutes statutory fair use.  *See* Def.'s  Memo. at 19-21.

## V.        **DEFENDANT, NOT PLAINTIFF, IS ENTITLED TO ATTORNEY'S FEES.**

Plaintiff provides no legal support for his assertion that he is entitled to an award of attorney's fees in this case.  As the Fourth Circuit has recognized (in a case cited by Plaintiff in his Opposition to Defendant's Motion), "for a prevailing plaintiff to succeed in a request for attorney fees, she must show that the defendant acted in bad faith."  *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 599 (4th Cir. 1992).  There is no basis to find that Defendant has acted in bad faith in defense of this case, particularly given that OWV prevailed in the prior UDRP proceeding brought by Plaintiff.  *See Academy of Motion Picture Arts and Sciences v. GoDaddy.com, Inc.*, No. 13-cv-8458, 2015 WL 5311085, at *51 (C.D. Cal. Sept. 10, 2015) (prior legal determinations can provide a party with "added security in its good faith belief" that its use of a domain name is lawful).

It is noteworthy, however, that in his attempt to justify that this is an "exceptional case" for which an award of fees is proper, Plaintiff continues to misstate the record, including by asserting that: (1) his trademark is valid when he has admitted submitting an altered specimen

and where the undisputed facts demonstrate that the mark was not used in commerce, despite Plaintiff's certification to the contrary; (2) an e-mail thread from *after* Plaintiff served OWV with his UDRP complaint proves anything about OWV's knowledge prior to receiving the complaint; and (3) OWV has lost three UDRP cases, when ***Plaintiff's own exhibits*** demonstrate that this is untrue.  By Plaintiff's own admission (whether typed by himself or by his cousin), this conduct is designed to "make this the most expensive domain [Mr. Belousov] will ever buy in his life."

Thus, while Defendant agrees that this is an exceptional case, it is Defendant, not Plaintiff, which should be awarded its fees.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons and those stated in Defendant's Memorandum in Support of its Motion for Summary Judgment and Reply, the Court should: (1) deny Plaintiff's Cross-Motion for summary judgment in its entirety; (2) grant summary judgment in Defendant's favor; (3) cancel Plaintiff's purported MYSCHOOL mark; and (4) award Defendant its costs and fees in defending against Plaintiff's frivolous allegations, including the instant Cross-Motion.

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

Dated: October 19, 2015       By:     /s/_____

                                       Attison L. Barnes, III (VA Bar No. 30458)
                                       David E. Weslow (Pro Hac Vice)
                                       Ari S. Meltzer (Pro Hac Vice)
                                       Rebecca L. Saitta (VA Bar No. 65408)
                                       Brian H. Pandya (VA Bar No. 72233)
                                       WILEY REIN LLP
                                       1776 K St. NW
                                       Washington, DC 20006
                                       (202) 719-7000 (phone)
                                       (202) 719-7049 (fax)
                                       abarnes@wileyrein.com
                                       dweslow@wileyrein.com
                                       rsaitta@wileyrein.com

                                       Counsel for Defendant MYSCHOOL.COM

REDACTED FOR PUBLIC INSPECTION
ORIGINAL FILED UNDER SEAL

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of October 2015, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record for Plaintiff JOSEPH L. CARPENTER:

> Steven Rinehart
> 110 S. Regent Street, Suite 200
> Salt Lake City, UT 84111
> Email: steve@uspatentlaw.us

> /s/ Attison L. Barnes /s/
> Attison L. Barnes, III (VA Bar No. 30458)
> WILEY REIN LLP
> 1776 K St. NW
> Washington, DC 20006
> (202) 719-7000 (phone)
> (202) 719-7049 (fax)
> abarnes@wileyrein.com
>
> *Counsel for Defendant MYSCHOOL.COM*